STATE of Minnesota, Respondent

v.

**Steven Allen BENNIEFIELD,
Appellant.**

No. C1–02–1991.

Court of Appeals of Minnesota.

Sept. 9, 2003.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN, for respondent.

Raymond F. Schmitz, Olmsted County Attorney, Rochester, MN, for respondent.

John M. Stuart, State Public Defender, Roy G. Spurbeck, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by RANDALL, Presiding Judge; HALBROOKS, Judge; and HUDSON, Judge.

## OPINION

RANDALL, Judge.

On appeal from his conviction and sentence for third-degree controlled-substance offense, appellant challenges the district court's refusal to appoint a substitute public defender or to inquire into whether special circumstances warranted appointment of substitute counsel. Appellant also challenges the constitutionality of the statute punishing possession of a controlled substance in a school zone more harshly than similar possession outside a school zone. Appellant also challenges the district court's failure to instruct the jury on intent or to allow appellant to argue lack of intent as a defense. Finally, appellant challenges the district court's refusal to apply a downward departure to his sentence, and then argues that his criminal history score was improperly calculated. We affirm the conviction. However, appellant's criminal history score was improperly calculated. We remand to the district court so that appellant may be sentenced according to a criminal history score of two, rather than three.

## FACTS

Late in the evening of December 17, 2001, Rochester police officer John Fishbaugher saw a man he recognized as appellant Steven Benniefield walking on the street. Fishbaugher called dispatch and found that appellant had outstanding warrants. Fishbaugher stopped appellant and arrested him. At the time Fishbaugher first noticed appellant, appellant was 61 feet from the edge of Riverside Elementary School's property line. During an initial search of appellant's person, Fishbaugher found a homemade crackpipe in appellant's pocket.

Appellant was taken to the Olmstead County Detention Center and strip-searched. The searching officer thought he noticed something in appellant's mouth, and ordered him to spit it out. Appellant insisted he did not have anything in his mouth, but made an exaggerated swallowing motion. Pursuant to normal procedure, appellant was taken to a local emergency room to ensure that he had not swallowed anything harmful.

At the emergency room, appellant was x-rayed and found not to have swallowed anything. On examination of the patrol car in which he was transported, however, a baggie containing a chunky, off-white substance was found on the floor near where appellant had been seated. The baggie itself was moist, as if it had been inside appellant's mouth. The off-white substance was determined to be 1.1 grams of crack cocaine.

Appellant was charged with third-degree controlled-substance offense: possession of cocaine in a school zone. A public defender was appointed to represent appellant. At the omnibus hearing, the public defender indicated to the court that appellant wished to discharge him because of a disagreement over the representation. The court explained to appellant that if he discharged the public defender appointed to represent him, his options would be to hire a private attorney or to represent himself, because the court would not appoint a new public defender. Appellant expressed his desire to be represented by counsel, but insisted that he did not want to be represented by his current public defender. At a number of hearings before trial, appellant reiterated that he did not feel competent to represent himself, and did not want the first appointed public defender to represent him. The court explained to appellant that the discharged public defender was one of the most experienced in the area, and that appellant had shown "no good reason" for discharging him.

434

A jury trial was held May 15 and 16, 2002. Appellant represented himself. The district court had appellant's former public defender present as advisory counsel. The state presented the testimony of all the officers involved in appellant's arrest and search. Appellant did not present any witnesses, and chose not to testify in his own behalf. The jury returned a guilty verdict.

On May 22, 2002, appellant filed a motion for new trial, arguing that he had not properly waived representation by counsel and that he had not possessed enough cocaine to warrant a third-degree charge. This motion was denied. Appellant became upset, began arguing with the court, and had to be removed from the courtroom.

Appellant was sentenced to 37 months in prison, based on the low end of the guideline range for the crime for an offender with three criminal history points. This appeal follows. Appellant challenges both his conviction and his sentence.

### ISSUES

I. Did the district court abuse its discretion by refusing to appoint substitute counsel?

II. Does Minn.Stat. § 152.023, subd. 2(4) (2002) violate appellant's right to equal protection under the law?

III. Did the district court err by refusing to allow appellant to argue lack of intent and by failing to instruct the jury on intent?

IV. Did the district court abuse its discretion by refusing to depart downward from the sentencing guidelines?

### ANALYSIS

**I. Appointment of substitute counsel**

Appellant argues that the district court abused its discretion by refusing to appoint substitute counsel when he discharged his public defender. A district court has discretion when deciding whether to appoint substitute counsel. *State v. Gillam*, 629 N.W.2d 440, 449 (Minn.2001). A district court should only appoint substitute counsel in the face of exceptional circumstances, because the right to counsel does not guarantee an indigent defendant the "unbridled right to be represented by counsel of his own choosing." *State v. Fagerstrom*, 286 Minn. 295, 299, 176 N.W.2d 261, 264 (1970). What constitutes an "exceptional circumstance" may vary, but generally includes those situations that "affect a court-appointed attorney's ability or competence to represent the client." *Gillam*, 629 N.W.2d at 449. What is clear is that "general dissatisfaction or disagreement with appointed counsel's assessment of the case" does not constitute exceptional circumstances. *State v. Worthy*, 583 N.W.2d 270, 279 (Minn.1998).

At the omnibus hearing, appellant's discharged public defender informed the court that he and appellant had a disagreement over representation, but did not elaborate. Appellant confirmed that he wished to discharge the attorney, but did not explain why. In a letter directed to the court later, appellant expressed dissatisfaction with the way the attorney had been handling his case, and stated that he wanted an attorney who was "willing to fight [appellant's] case in my best interest."

To the extent that the district court's comments may have suggested that it *could not* appoint substitute counsel, it was incorrect. *See State v. Lamar*, 474 N.W.2d 1, 3 (Minn.App.1991), *review denied* (Minn. Sept. 13, 1991). But here, the record shows that the district court found that appellant did not present any "exceptional circumstances" that would warrant appointment of substitute counsel. Appellant expressed mere dissatisfaction with

his attorney's representation, and did not show that his attorney was incompetent or otherwise unable to adequately represent him. Appellant was extensively warned of the consequences of discharging his public defender and informed that the responsibility of finding new counsel would fall on him. Also, the district court appointed standby counsel who was available to appellant throughout trial. While appellant may not have wished to represent himself, he unambiguously chose to discharge his appointed attorney, failed to show the court "exceptional circumstances" to justify the appointment of another public defender, and then failed to retain alternative counsel. The district court did not err, on these facts, when it refused to appoint another public defender after appellant made it clear he did not want to be represented by the public defender initially appointed.

## II. Equal Protection

 Appellant argues that Minn.Stat. § 152.023, subd. 2(4) (2002), under which he was convicted, violates the equal protection guarantee of the Minnesota Constitution because there is no genuine and substantial distinction between those who possess cocaine in a school zone and those who possess cocaine outside a school zone. Appellant failed to make this constitutional argument before the district court. But, this court will consider the claim in the interests of justice. *See State v. Licari,* 659 N.W.2d 243, 256 (Minn.2003). This court reviews the constitutionality of a statute de novo. *State v. Frazier,* 649 N.W.2d 828, 832 (Minn.2002). A defendant claiming unconstitutionality bears the burden of showing that the statute is unconstitutional beyond a reasonable doubt. *Scott v. Minneapolis Police Relief Ass'n,* 615 N.W.2d 66, 73 (Minn.2000). Because the statute in question involves neither a suspect classification nor a fundamental right, this court reviews the challenge un-

der a rational basis standard to determine whether the classification drawn is rationally related to a legitimate state interest. *Id.* at 74.

Under Minn.Stat. § 152.023, subd. 2(4) (2002), it is a third-degree controlled-substance offense to possess any amount of cocaine (a schedule II narcotic) in a school zone. "School zone" is defined as school property or the surrounding area up to 300 feet or one city block (whichever is greater) from the edge of school property. Minn.Stat. § 152.01, subd. 14a (2002). Appellant was seen carrying 1.1 grams of crack cocaine 61 feet from school property. Had he not been in a school zone, he would have been charged with a fifth-degree violation. Minn.Stat. § 152.025, subd. 2(1) (2002).

Appellant concedes that numerous federal cases have upheld the constitutionality of the federal "school-house drug statute." 21 U.S.C. § 860 (West 2003). This federal statute provides enhanced penalties for the distribution, possession with intent to distribute, and manufacture of controlled substances within 1,000 feet of a school. *Id.* Federal courts have held that penalizing those who sell drugs in a school zone more harshly is a rational way to achieve the legitimate goal of protecting children from drugs. *See, e.g. United States v. Agilar,* 779 F.2d 123, 125–26 (2d Cir.1985). Appellant concedes in his brief that Minn.Stat. § 152.023, subd. 2(4) also has the goal of protecting children against illicit drugs.

Appellant argues that section 152.023, subd. 2(4) differs from the federal statute in that it penalizes mere possession in a school zone, even without intent to distribute. Appellant argues that this difference renders the classification arbitrary, and that the statute no longer reasonably furthers the goal of protecting children against the sale of drugs. We note that courts in other jurisdictions have held that the purpose of "school-zone" laws is to

eliminate *all* dangers drugs pose to children in schools. *See State v. Jenkins,* 15 S.W.3d 914, 916 (Tenn.Crim.App.1999); *Polk v. State,* 683 N.E.2d 567, 571 (Ind. 1997). In *Polk,* the Indiana Supreme Court upheld the constitutionality of penalizing mere possession in a school zone more severely. *Polk,* 683 N.E.2d at 571. The court explained that it is the "legislature's prerogative to determine that a drug-free zone deters possible spillover effects" of controlled substance violations in proximity to schools. *Id.* We agree with these courts that drug offenders pose risks to children in schools beyond just the sale of drugs. Syringes, pipes and paraphernalia, as well as dropped or discarded drugs could threaten children if left in a schoolyard even if, like appellant, the offender entered the area at night when no children were present. It is legitimate for the legislature to guard against these dangers.

Appellant also argues that he merely crossed the school zone in transit, and that penalizing offenders for merely passing through a school zone is not rational. We think the Indiana court is persuasive when it said, "[n]othing forces drug offenders to drive within the drug-free zone created by the legislature. To the contrary, they pass there at their own peril and in jeopardy of their own penal interests." *Polk,* 683 N.E.2d at 572. Appellant chose to walk through a school zone with crack cocaine in his possession. In doing so, he assumed a risk that he would be stopped and arrested. The legislature has chosen stiffer penalties for possession or sale in school zones to protect children against drugs around their schools. Appellant has not shown that this statute is unconstitutional beyond a reasonable doubt.

### III. Element of intent

Appellant next argues that the district court erred in ruling that the state did not have to prove that appellant intended to be in, or had knowledge that he was in, a school zone, and by refusing to allow appellant to argue his lack of intent to the jury. Questions of statutory interpretation are questions of law, and are reviewed de novo. *State v. Loge,* 608 N.W.2d 152, 155 (Minn.2000). Where the language of a statute is clear and unambiguous, the courts must give effect to the plain meaning of that language. *Id.* (citing Minn.Stat. § 645.16 (1998)).

Minn.Stat. § 152.023, subd. 2(4) (2002) states that a person is guilty of third-degree controlled substance offense if:

> on one or more occasions within a 90 day period the person unlawfully possesses any amount of a schedule I or II narcotic drug * * * in a school zone * * *.

This language does not indicate an intent requirement as to location. The only intent indicated here is that the person have "unlawfully possessed" the cocaine. A person is guilty of unlawful possession if he knows the nature of the substance and either physically or constructively possesses it. *State v. Florine,* 303 Minn. 103, 226 N.W.2d 609, 610 (1975). Appellant does not dispute that he possessed cocaine or that he knew it was cocaine. Rather, he asks this court to read an additional intent element into the statute, requiring that the state prove that he knew he was in, or intended to be in, a school zone. We decline to do so. The language of the statute is clear, and does not require that a defendant know he is, or intend to be in, a school zone when he possesses cocaine.

Numerous state and federal cases construing similar statutes have held that strict liability attaches, and that it falls on offenders to find out where school zones are and to steer clear of them. *See, e.g. United States v. Dimas,* 3 F.3d 1015, 1022 (7th Cir.1993) (federal school-zone law does not require mens rea, citing other

federal cases with similar holding); *Polk,* 683 N.E.2d at 570 (noting that law is clear that no mens rea is required). Because Minn.Stat. § 152.023, subd. 2(4) (2002) does not require knowledge or intent as to the location element, the district court did not err by refusing to allow appellant to argue his lack of intent or by failing to instruct the jury as to intent.

## IV. Sentencing

 Finally, appellant challenges the district court's refusal to depart downward from the sentencing guidelines. A district court has discretion to depart from the sentencing guidelines only if aggravating or mitigating circumstances are present. *State v. Best,* 449 N.W.2d 426, 427 (Minn.1989). Only in rare cases will this court overturn a district court's refusal to depart from a presumptive sentence. *State v. Kindem,* 313 N.W.2d 6, 7–8 (Minn. 1981) (supreme court upholding district court's refusal to depart downward where a guideline sentence was imposed). A district court may consider the defendant's conduct at all stages of the case, including sentencing, in weighing sentencing options. *State v. Hough,* 585 N.W.2d 393, 397 (Minn.1998).

 Appellant may be correct that his conduct was less serious than that of a typical offender convicted of possessing cocaine in a school zone. Appellant was in a school zone at night (well after school hours), and appears to have been walking through the zone on his way home from work. The district court indicated after trial that it might consider a downward departure. Then, at a hearing on appellant's motion for new trial, appellant became angry and entered into a confrontation with the court. Ultimately, appellant was removed from the courtroom and given 30 days for contempt of court. At the sentencing hearing, the prosecutor revealed that appellant had refused to cooperate with the presentence investigation. Based on all the information presented, the district court imposed a sentence of 37 months, a sentence at the low end of the presumptive range. The court recommended that appellant be eligible for the Challenge Incarceration Program (Boot Camp), which if completed successfully, could reduce appellant's incarceration time.

 A district court "may depart from the presumptive sentence." Minn. Sent. Guidelines II.D. A district court is not *obligated* to depart downward from the guidelines, even if a mitigating factor is present. *State v. Wall,* 343 N.W.2d 22, 25 (Minn.1984). The same is true of aggravating factors. A district court is never obligated to depart upward. The presumptive sentence remains the presumptive sentence. The district court here, considering appellant's behavior both during the commission of the offense and during the criminal proceedings, did not err in determining that a downward departure, although it could have been given, was not mandated.

 Appellant argues, and respondent concedes, that appellant's criminal history score was miscalculated. The erroneous inclusion of two prior misdemeanors resulted in appellant receiving a score of three. Those two misdemeanors had decayed by the time appellant committed the current offense, and should not have been included in appellant's criminal history score calculation. We remand to the district court to resentence appellant with a criminal history score of two to something less than 37 months. It would not be due process to move to the high end of the presumptive range to negate appellant's successful appeal on calculating his criminal history score.

## DECISION

The district court did not err by refusing to appoint appellant substitute counsel

438

after he discharged his public defender. The district court correctly determined that Minn.Stat. § 152.023, subd. 2(4) (2002) does not violate the Equal Protection component of the Minnesota Constitution, and does not require that appellant intend to be or know that he is in a school zone to be convicted of a third-degree controlled-substance offense. Finally, the district court did not abuse its discretion by refusing to depart downward from the sentencing guidelines after considering appellant's behavior both during and after trial. Because appellant's criminal history score was miscalculated, we remand for resentencing consistent with this decision.

**Affirmed in part, reversed in part, and remanded.**