STATE of Minnesota, Respondent,

v.

Steven Allen BENNIEFIELD, Appellant.

No. C1–02–1991.

Supreme Court of Minnesota.

April 22, 2004.

---

John M. Stuart, State Public Defender, Roy G. Spurbeck, Assistant Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN, Raymond F. Schmitz, Olmsted County Attorney, Rochester, MN, for Respondent.

## OPINION

HANSON, Justice.

Appellant was convicted of third-degree possession of a controlled substance within a school zone. He argues that punishing possession within a school zone more harshly than possession outside a school zone violates the equal protection guaranty of the Minnesota Constitution. Alternatively, he argues that a conviction of this crime requires proof that he either knew he was in a school zone or intended to commit the crime in a school zone. Because there is a rational basis to enhance the crime where possession occurs within a school zone, and the plain language of the statute does not impose a mens rea requirement on the location element of the crime, we affirm.

On December 17, 2001, at approximately 11:00 p.m., police officer John Fishbauger noticed appellant Steven Allen Benniefield walking at the corner of 7th Avenue and 6th Street Southeast in Rochester, Minnesota, within approximately 61 feet of the Riverside School property line. The officer recognized Benniefield from previous encounters and checked with police dispatch to see if there were any outstanding warrants for his arrest. After being informed that there was an outstanding warrant for Benniefield, Officer Fishbauger stopped Benniefield and placed him under arrest. During a pat-down search, the officer discovered a makeshift crack pipe in Benniefield's pocket.

Benniefield was placed in another officer's squad car and taken directly to the adult detention center. When the transporting officer searched his squad car, he found a baggie containing small off-white colored "rocks." These rocks were later identified as containing 1.10 grams of cocaine.

Benniefield was charged with violation under Minn.Stat. § 152.023, subd. 2(4) (2000), a third-degree controlled substance offense for possession of any amount of a Schedule II narcotic drug "in a school zone, a park zone, a public housing zone, or a drug treatment facility." Cocaine is a Schedule II narcotic drug. Minn.Stat. § 152.01, subd. 10 (2002). A school zone is defined as:

(1) any property owned, leased, or controlled by a school district or an organization operating a nonpublic school, as defined in section 123B.41, subdivision 9, where an elementary, middle, secondary school, secondary vocational center or other school providing educational services in grade one through

grade 12 is located, or used for educational purposes, or where extracurricular or cocurricular activities are regularly provided;

(2) the area surrounding school property as described in clause (1) to a distance of 300 feet or one city block, whichever distance is greater, beyond the school property; and

(3) the area within a school bus when that bus is being used to transport one or more elementary or secondary school students.

Minn.Stat. § 152.01, subd. 14a (2002).

Benniefield represented himself at trial. In his opening statement, Benniefield informed the jury that he had not intended to be in a school zone, that he was merely on his way home from work, and that this was the most direct route to his home. The state filed a motion in limine requesting that the court not allow Benniefield to argue that intent to be in a school zone or knowledge of being in the school zone was a necessary element of the crime. The district court granted the motion in limine. Benniefield presented no witnesses and did not testify himself.

The jury returned a verdict of guilty. The court denied Benniefield's motion for a new trial and sentenced him to 37 months in prison for third-degree possession, a severity VI level offense. According to the sentencing guidelines in effect at that time, the presumptive sentence with a criminal history score of 3 was from 37 to 41 months. *See* Minnesota Sentencing Guidelines IV.

On direct appeal, Benniefield argued that punishing for possession of a controlled substance in a school zone more harshly than possession outside a school zone violates equal protection and that the district court erred in failing to instruct the jury that the offense required proof of intent to be in a school zone. *See State v. Benniefield*, 668 N.W.2d 430, 433 (Minn. App.2003). The court of appeals affirmed the conviction.[1] *Id.* at 435–38.

### I.

▮▮▮ Benniefield challenges the constitutionality of Minn.Stat. § 152.023, subd. 2(4), on equal protection grounds. Unless a fundamental right or suspect class is involved, statutes are presumed to be constitutional. *Rio Vista Non–Profit Housing Corp. v. Ramsey County*, 335 N.W.2d 242, 245 (Minn.1983). We will hold a statute unconstitutional "only when absolutely necessary." *State v. Behl*, 564 N.W.2d 560, 566 (Minn.1997). We review the constitutionality of a statute *de novo*. *State v. Machholz*, 574 N.W.2d 415, 419 (Minn. 1998). A defendant, claiming that a statute is unconstitutional, bears the burden of showing that the statute is unconstitutional beyond a reasonable doubt. *Scott v. Minneapolis Police Relief Ass'n, Inc.*, 615 N.W.2d 66, 73 (Minn.2000).

▮▮▮ Benniefield did not challenge the constitutionality of the statute at trial. We need not consider issues that were not presented to the district court but may choose to do so where the interests of justice so require. *State v. Sorenson*, 441 N.W.2d 455, 457 (Minn.1989). The court of appeals considered the equal protection claim in the interests of justice. *Benniefield*, 668 N.W.2d at 435. We do likewise.

Benniefield argues that Minn.Stat. § 152.023, subd. 2(4), "violates the equal protection component of the Minnesota

---

1. The court of appeals remanded the sentence to the district court because the court had improperly calculated Benniefield's criminal history score at 3 instead of 2. Benniefield's sentence was subsequently reduced to 33 months to reflect the proper criminal history score.

Constitution because there is no genuine and substantial distinction between those who receive longer sentences for possession of a controlled substance in a school zone and those who possess the substance outside such a zone." Benniefield reinforces his argument by pointing out that the statute does not require that school children actually be present and does not distinguish between mere possession and the manufacture or sale of drugs in a school zone. Benniefield concludes, "[w]ithout some greater connection to the statute's purpose, such as children being present or a requirement tied to the time of day, the greater penalty for mere possession in the school zone does not relate to the purported goals to be achieved, that is protecting children."

Benniefield acknowledges that federal courts have determined that similar federal drug statutes that enhance drug crimes that occur within a school zone are constitutional. He argues that the Minnesota Constitution provides greater protection than the federal constitution when reviewing equal protection challenges and the federal enhancement statute is distinguishable because it requires the sale, distribution or manufacture of drugs within the school zone, not mere possession.

The state counters that drug activity in a school zone, even at times when children are not present, can have adverse consequences for children and thus the enhancement of the crime for possession in a school zone has a rational basis. The state suggests the example that if Benniefield had disposed of the drugs when he was first observed by the officer, the drugs could have later been found and used by children. The state concludes that the possible consequences of the presence of any kind of drug activity in a school zone provides "a rational basis for the legisla-

ture trying to deter possession or use of drugs in a school zone at any time of day."

■ When a statute does not involve a suspect classification or a fundamental right, this court reviews the constitutional challenge to the statute under a rational-basis test. *Scott*, 615 N.W.2d at 74. Benniefield does not claim that Minn.Stat. § 152.023, subd. 2(4), involves a suspect classification or a fundamental right. Thus, Minn.Stat. § 152.023, subd. 2(4), will be presumed to be constitutional and should be sustained "if the classification drawn by it is rationally related to a legitimate governmental interest." *Kolton v. County of Anoka*, 645 N.W.2d 403, 411 (Minn.2002).

■ This court employs a three-pronged rational-basis test as follows:

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*State v. Russell*, 477 N.W.2d 886, 888 (Minn.1991).

Benniefield does not claim that the definition of a school zone is arbitrary or capricious, but that the imposition of a more severe sentence for third-degree possession, based solely on the location in a school zone and with no limitations as to the time of day or the actual presence of children, does not further the public safety

goal of the legislature.[2] It is true that conviction of third-degree possession under Minn.Stat. § 152.023, subd. 2(4), carries a significantly greater penalty than conviction of fifth-degree possession for possession of the same quantity of drugs outside a school zone. The maximum prison term for third-degree possession is 20 years and the presumptive sentence, with a criminal history score of 2, is 33 months. Minn.Stat. § 152.023, subd. 3; Minnesota Sentencing Guidelines IV. The maximum prison sentence for fifth-degree possession is 5 years and the presumptive sentence, with a criminal history score of 2, is 13 months stayed. Minn.Stat. § 152.025, subd. 3(a) (2002); Minnesota Sentencing Guidelines IV, V.

Applying the three-prong test, we must first determine whether there is a genuine or substantial reason to differentiate between those who possess drugs within a school zone and those who possess drugs outside a school zone. *See Russell*, 477 N.W.2d at 888. We conclude that there is a rational connection between the goal of protecting children from drugs and deterring the possession of drugs in a school zone. There is a genuine risk that those involved in illegal drug use, whether selling or merely possessing a controlled substance, could bring the dangers associated with illegal drugs into school zones. For example, abandoned drugs or discarded drug paraphernalia might be found in or around areas of drug use. The desire to provide an area for schoolchildren, free of illegal drugs and the possible accessories that go with illegal drug use, is a genuine and substantial reason for enhancing the crime to deter criminals who choose to

bring illegal drugs within 300 feet of school property. *See, e.g., Polk v. State*, 683 N.E.2d 567, 571 (Ind.1997) (concluding that "it is within the legislature's prerogative to determine that a drug-free zone deters possible spillover effects, and to provide enhanced penalties for controlled substance violations in proximity to schools.").

We must next determine whether differentiating between those who possess controlled substances in a school zone and those who possess them outside a school zone is relevant to the purpose of the law. *See Russell*, 477 N.W.2d at 888. Both parties acknowledge that the purpose of the statute is to provide for public safety, especially that of schoolchildren on their way to or while at school. Preventing illegal drugs from being present near schools is relevant to the purpose of protecting school children from the dangers associated with illegal drug use.

Finally, we must determine whether the objective of achieving a safe area for school children is a legitimate one for the state. *Id.* Benniefield concedes, and it is apparent, that the state can legitimately take measures to provide a safe area for children to attend school.

We conclude that there is a rational basis for the legislature to enhance the crime for those who possess illegal drugs in a place where children are likely to be present on a regular basis in order to protect children from discarded drugs or drug paraphernalia. Thus, we conclude that Minn.Stat. § 152.023, subd. 2(4), as applied to the present facts, does not vio-

**2.** Benniefield also observes that the distinction for possession in a school zone would produce the irrational result that a person merely traveling through a school zone on a city bus could be prosecuted for the greater offense. But this fact pattern is not before us and we need not determine whether the statute would be constitutional as applied to those facts. Benniefield does not contest that he was on foot within 61 feet of school property while in the possession of a controlled substance.

late the guaranty of equal protection contained in the Minnesota Constitution.

## II.

■ Benniefield argues that the district court erred in not allowing him to argue lack of intent to be in a school zone and in not including intent to be in a school zone as a necessary element of the crime in the jury instructions. Benniefield argues that the dramatic increase in the penalty associated with possession of a controlled substance in a school zone compels the court to imply the requirement that the state prove not only the intent to possess but also the intent to possess in this particular location. The state argues that the plain language of the statute does not require proof of an intent to be in a school zone. The state points out that the statute does have a mens rea requirement, the intent to possess an illegal drug, and argues that a mens rea requirement need not attach to every element of the crime.

In *In re C.R.M.*, 611 N.W.2d 802 (Minn. 2000), we examined the language of a somewhat similar criminal statute that makes it a felony offense to possess a dangerous weapon on school property. At that time, the statute was silent on any mens rea requirement.[3] Minn.Stat. § 609.66, subd. 1d (1998). A juvenile was convicted of the crime based on his possession on school property of a folding knife with a 4-inch blade. *C.R.M.*, 611 N.W.2d at 803. We observed that knives are not inherently dangerous or anti-social and thus that the possessor would not necessarily be put on notice that mere possession could be a crime. *Id.* at 809–10. We declared that "great care is taken to avoid interpreting statutes as eliminating mens rea where doing so criminalizes a broad

range of what would otherwise be innocent conduct." *Id.* at 809. We concluded that the state was required to prove that the appellant "knew he possessed the knife on school property." *Id.* at 810.

*In re C.M.R.* can be distinguished from the present case and is not controlling. In fact, in *In re C.M.R.* we distinguished possession that only becomes criminal in certain locations from possession that is criminal independent of the location. We observed that items such as knives "are certainly not as inherently anti-social as *illegal drugs* and hand grenades." *Id.* (emphasis added). Because the mere possession of illegal drugs is a crime, the possessor is already on notice of the illegality of his actions, without regard to location.

■ We have implied a mens rea requirement for the possession of a controlled substance. In *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975), a case charging the defendant with possession of cocaine, we held that the "state must prove that defendant consciously possessed * * * the substance and that defendant had actual knowledge of the nature of the substance." Having established that mens rea is an implied element in the statute with respect to possession, we see no basis for requiring the state to demonstrate an additional mens rea element with respect to location. *See Florine*, 303 Minn. at 104, 226 N.W.2d at 610. The possessor of the illegal drug who is already on notice that his conduct is criminal can reasonably be expected to assume the risk that he might enter a location that will make the consequences of his crime more severe. *Polk*, 683 N.E.2d at 572.

Finally, we recognize that proof of a defendant's intent to be in a specified loca-

---

**3.** This statute was amended in 2003 to expressly state "while knowingly on school property."

tion would be difficult. Benniefield was charged with possession of a controlled substance for which possession was a crime even outside the protected area. The district court correctly ruled that the state was not required to prove that Benniefield also knew that he was in a school zone or intended to commit the crime in a school zone.

This conclusion is consistent with federal and other state decisions that have consistently held that, although the government must prove an intent to sell illegal drugs, it need not prove an intent to do so in the prohibited location of a school zone. *See, e.g., United States v. Dimas,* 3 F.3d 1015, 1022 (7th Cir.1993); *United States v. Falu,* 776 F.2d 46, 50 (2d Cir.1985); *State v. Denby,* 235 Conn. 477, 668 A.2d 682, 685 (1995). *See also* Tracy A. Bateman, *Validity, Construction and Application of State Statutes Prohibiting Sale or Possession of Controlled Substances Within Specified Distance of Schools,* 27 A.L.R. 5th 593 § 31 (1995 & Supp.2003) (compiling cases from Florida, Indiana, Ohio, and Pennsylvania holding that intent to be or knowledge of being in a school zone is not necessary for conviction).

We hold that Minn.Stat. § 152.023, subd. 2(4), does not require proof that a defendant intended to be or knew that he was in a school zone.

Affirmed.