STATE of Minnesota, Appellant,

v.

Guillermo GARCIA–GUTIERREZ, Respondent,

Armando NMN Araiza, Respondent,

Aidan James Heine Mellgren, Respondent,

Terry Darnell Gilliam, Jr., Respondent,

Jamie David Pintor–Velo, Respondent.

No. A12–2012.

Court of Appeals of Minnesota.

May 20, 2013.

Lori Swanson, Attorney General, St. Paul, MN; and Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, MN, for appellant.

Sharon E. Jacks, Minneapolis, MN, for respondents Garcia–Gutierrez, Araiza, Mellgren, and Pintor–Velo.

Steven Bergeson, Shakopee, MN, for respondent Gilliam, Jr.

Considered and decided by HOOTEN, Presiding Judge; CLEARY, Judge; and CHUTICH, Judge.

## OPINION

CHUTICH, Judge.

In this pretrial appeal, the state argues that the district court erred by dismissing charges of first-degree burglary—possession of a dangerous weapon for lack of probable cause. Because the district court properly concluded that possession must be knowing and that the evidence does not

establish probable cause under that standard, we affirm.

## FACTS

The night of June 8, 2012, C.S. reported a burglary at his Shakopee home to the Shakopee Police Department. C.S. and his girlfriend had returned home around 9:00 p.m. and noticed a broken glass door. C.S. reported several items as stolen from his home including a safe that contained a .45 caliber handgun.

That same evening, Prior Lake police officers responded to a citizen's call reporting suspicious behavior outside an apartment building in Prior Lake. The caller said that a group of four or five men were gathered outside the apartment building, repeatedly smashing a box to the ground. The caller also reported that one of the men had a handgun. When the officers arrived at the apartment building, they found respondents Guillermo Garcia Gutierrez, Jamie Pintor–Velo, Armando Araiza, Aidan Mellgren, and Terry Gilliam, Jr., at the apartment of A.M. A.M. gave the officers consent to enter her apartment, where they found a .45 caliber handgun and some of the other items that C.S. had reported as stolen.

Scott County charged each respondent with one count of first-degree burglary—possession of a dangerous weapon, in violation of Minnesota Statutes section 609.582, subdivision 1(b); one count of second-degree burglary; two counts of theft; and one count of crime committed for the benefit of a gang.

Respondents moved to dismiss the first-degree burglary charges for lack of probable cause. They asserted that for a conviction of first-degree burglary—possession of a dangerous weapon, the state had to prove that they knew of and intended to possess a dangerous weapon during the burglary. They claimed, however, that they did not know that the safe contained a gun until later when they smashed the safe open in front of the Prior Lake apartment building. The state contended, by contrast, that respondents' knowledge of the gun was irrelevant because the legislature "did not set forth an additional mens rea to require the 'knowing' possession of a dangerous weapon."

The district court found that no evidence showed that respondents had "knowledge or control of, or immediate access to, the weapon." Accordingly, the district court dismissed the first-degree burglary charges because the state failed to prove that respondents "had actual or constructive possession of the handgun." The state appealed.

## ISSUE

Does Minnesota Statutes section 609.582, subdivision 1(b), require the state to prove that respondents knowingly possessed a dangerous weapon?

## ANALYSIS

■ "[T]he test of probable cause is whether the evidence worthy of consideration ... brings the charge against the [defendant] within reasonable probability." *State v. Florence*, 306 Minn. 442, 446, 239 N.W.2d 892, 896 (1976) (quotation omitted). In determining questions of probable cause, the district court "must exercise an independent and concerned judgment addressed to this important question: Given the facts disclosed by the record, is it fair and reasonable ... to require the defendant to stand trial?" *Id.* at 457, 239 N.W.2d at 902.

■ The state may appeal from a probable-cause dismissal order "based on [a] question[ ] of law." Minn. R.Crim. P. 28.04, subd. 1(1). The state must show that the district court's ruling was errone-

ous and that the order will have a "critical impact" on its ability to prosecute the case. *State v. McLeod,* 705 N.W.2d 776, 784 (Minn.2005). Respondents do not dispute that the district court's order has a critical impact on the state's case, and we agree. Thus, the only issue on appeal is whether the district court's interpretation of section 609.582, subdivision 1(b), is correct.

The construction of a statute is a legal determination subject to de novo review. *State v. Carufel,* 783 N.W.2d 539, 542 (Minn.2010). "Where the legislature's intent is clearly discernible from plain and unambiguous language, statutory construction is neither necessary nor permitted and we apply the statute's plain meaning." *Hans Hagen Homes, Inc. v. City of Minnetrista,* 728 N.W.2d 536, 539 (Minn.2007). When construing a statute, this court is required to consider that "the legislature intends the entire statute to be effective." Minn.Stat. § 645.17(2) (2012). This court must "read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *State v. Brown,* 801 N.W.2d 186, 188 (Minn.App. 2011) (quotation omitted).

The first-degree burglary statute provides in relevant part:

> Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, either directly or as an accomplice, commits burglary in the first degree . . . if:
>
> . . .

(b) the burglar *possesses,* when entering or *at any time while in the building,* any of the following: *a dangerous weapon,* any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or an explosive[.]

Minn.Stat. 609.582, subd. 1 (emphasis added).

 "Mens rea is the element of a crime that requires the defendant know the facts that make his conduct illegal." *State v. Ndikum,* 815 N.W.2d 816, 818 (Minn.2012) (quotation omitted). Minnesota courts have rarely read statutes to dispense with a mens rea element for felony-level offenses that carry a severe punishment. *See In re Welfare of C.R.M.,* 611 N.W.2d 802, 808 (Minn.2000) (stating that it is a "long established principle . . . that in common law crimes and in felony level offenses mens rea is required"). Strict liability offenses are disfavored, and the legislative intent to dispose with a mens rea requirement must be clear.[1] *Id.*

Here, the burglary statute contains a clear mens rea requirement to establish that some type of burglary has occurred—that the defendant must enter a building without consent and "with intent to commit a crime." Minn.Stat. § 609.582, subd. 1. But subdivision 1(b), which sets out the elements to establish the *degree* of burglary, and thus substantially raise the potential penalty imposed from possible imprisonment for up to one year (fourth-degree burglary), *id.,* subd. 4, to up to twenty years (first-degree burglary), *id.,* subd. 1, is silent on whether a defendant must

---

1. In limited circumstances, the legislature may dispense with mens rea through silence in criminalizing so-called "public welfare" offenses. *See Ndikum,* 815 N.W.2d at 819–20 (citing *Staples v. United States,* 511 U.S. 600, 606–07, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994)); *C.R.M.,* 611 N.W.2d at 808–10.

Public welfare statutes are those that "regulate potentially harmful or injurious items, including dangerous or deleterious devices or products or obnoxious waste materials." *Ndikum,* 815 N.W.2d at 819–20 (quotations omitted). Burglary is not a public welfare offense.

knowingly possess a dangerous weapon to be convicted of first-degree burglary.

The state asserts that the absence of mens rea language concerning possession was purposeful. It argues that the district court erred by adding an additional element to the statute—the "knowing" possession of a dangerous weapon—when the statute contains no such language. The state contends that the legislature routinely identifies factors to determine the *degree* of an offense without requiring additional mens rea and that the risk of possessing a dangerous weapon, even if unknowingly, should be on the burglars, who know that they are committing a crime by entering a home and taking a safe.

Respondents, by contrast, assert that no language in the subdivision contains a clear legislative intent to dispense with mens rea for the element of possession of a dangerous weapon; it is not uncommon for criminal statutes to contain mens rea requirements for more than one element of an offense; and that in interpreting subdivision 1(b)'s silence on mens rea, this court should look to the statute's purpose in criminalizing an act to determine whether a mens rea is implied. For the following reasons, we agree with respondents and conclude that subdivision 1(b)'s silence on the matter does not suggest that the legislature intended to dispense with mens rea as an element of possession of a dangerous weapon during a burglary.

First, the plain language of the "dangerous weapon" phrase in subdivision 1(b) contains no clear indication that the legislature meant to criminalize unknowing possession of a dangerous weapon. Nothing in the statutory language shows an intent to impose such a substantially greater punishment on offenders who did not even know that they possessed such a weapon. "[S]tatutory silence is typically insufficient

to dispense with mens rea." *Ndikum,* 815 N.W.2d at 818.

Moreover, when read as a whole, subdivision 1(b) suggests a legislative intent to require the knowing possession of a dangerous weapon. Another phrase in the subdivision further prohibits possession of "any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon." Minn.Stat. § 609.582, subd. 1(b). This phrase necessarily implies that a defendant know of the object's presence; a defendant could not use or fashion an article without knowing that she possessed it. Construing the "dangerous weapon" phrase together with the "used or fashioned" phrase supports reading a requirement of knowing possession into the entire statutory subdivision.

Further, Minnesota courts have consistently interpreted the term possession as requiring knowledge for other felony and gross misdemeanor level offenses involving firearms and contraband. *See Ndikum,* 815 N.W.2d at 822 (requiring knowing possession for a conviction of possession of a pistol in public); *State v. Benniefield,* 678 N.W.2d 42, 48 (Minn.2004) (requiring knowing possession of drugs to be guilty of possessing drugs on school grounds); *C.R.M.,* 611 N.W.2d at 810 (requiring knowing possession to be guilty of possessing a dangerous weapon at school); *State v. Strong,* 294 N.W.2d 319, 320 (Minn.1980) (requiring knowing possession for the charge of entering a prison with a weapon or a controlled substance); *State v. Florine,* 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975) (reading a knowledge requirement into possession of a controlled substance statute); *State v. Siirila,* 292 Minn. 1, 10, 193 N.W.2d 467, 473 (1971) (reading a knowledge requirement into the offense of possession of a small amount of marijuana, a gross misdemeanor), *cert denied,* 408

U.S. 925, 92 S.Ct. 2503, 33 L.Ed.2d 336 (1972).

In addition, a knowledge requirement does not thwart the legislative intent of the statute. Statutes increasing penalties based on possession of dangerous weapons reflect the obvious reality that possession of a firearm while committing a [burglary] substantially increases the risk of violence, whether or not the offender actually uses the firearm. *State v. Herbert*, 601 N.W.2d 210, 212 (Minn.App.1999). But no risk of increased violence exists where evidence shows that an intruder does not know of the existence of a dangerous weapon and therefore cannot use it. Here, for example, no evidence shows that respondents knew that the locked safe contained a gun and thus it would not have been possible for respondents to use the weapon during the burglary if the police or residents approached the house.

The state cites *State v. Benniefield* to support its argument that the supreme court has not always required knowledge of a second element of a crime when a defendant knowingly engages in criminal conduct. 678 N.W.2d 42. There, the supreme court noted the distinction between "possession that only becomes criminal in certain locations" and "possession that is criminal independent of location." *Id.* at 48. For a conviction of possession of drugs on school grounds, the supreme court held that it was unnecessary to prove that the defendant knew he was on school grounds because by possessing drugs, he was "already on notice that his conduct is criminal [and] can reasonably be expected to assume the risk that he might enter a location that will make the consequences of his crime more severe." *Id.*

In placing this risk upon drug dealers, *Benniefield* approvingly referenced federal decisions interpreting a similar federal statute criminalizing possession and distri-

bution of controlled substances on school grounds. *Id.* at 49. These cases explain that "the burden is on dealers to find where the schools are and steer clear of them" because of Congress's clear intent to "create a drug-free zone around schools." *U.S. v. Dimas*, 3 F.3d 1015, 1022 (7th Cir.1993) (quotation omitted). "[A] requirement that the dealer know that a sale is geographically within the prohibited area would undercut this unambiguous legislative design." *U.S. v. Falu*, 776 F.2d 46, 50 (2d Cir.1985).

Contrary to the clear intent imposed by Congress and legislatures in creating these drug-free zones, nothing in the burglary statute evinces such an "unambiguous legislative design" that would pass the risk of unknowing possession of a dangerous weapon to respondents. To be sure, respondents were on general notice that entering a home without consent and taking a locked safe is a criminal act. But, unlike Benniefield, who knew he possessed an illegal substance, respondents here had no notice that by possessing a locked safe they were also possessing the hidden dangerous weapon inside. Absent a clear directive by the legislature to impose this risk of accidental possession on an intruder, basic principles of fairness require that defendants be criminally liable only for actions that they purposefully undertake. *See State v. Koenig*, 666 N.W.2d 366, 372 (Minn.2003) (stating that when construing statutes, courts presume "that the legislature does not intend ... unreasonable results").

This principle of fair warning is especially compelling when unwitting possession of a gun subjects an intruder to a penalty that is two times greater than that of second-degree burglary. *See* Minn.Stat. § 609.582, subds. 1, 2 (2012). Historically, courts have considered the penalty imposed when considering whether a statute

should be construed to dispense with mens rea. *Ndikum*, 815 N.W.2d at 822. Given the substantial increase in criminal liability in subdivision 1(b) based on possession, we hold that such possession must be knowing.[2] *See id.* ("[I]mposing severe punishments for offenses that require no mens rea would seem incongruous." (quotation omitted)).

Finally, we note that our decision is in accord with a Florida case that addresses very similar facts, *Barrett v. State*, 983 So.2d 795 (Fla.Dist.Ct.App.2008). In *Barrett*, the defendant broke into an automobile dealership and found a safe. *Id.* at 796. He put the safe in his car and later, after he opened it, found a loaded gun. *Id.* Under Florida law, a burglary is punishable by a term up to life in prison "if, in the course of committing the offense, the offender ... becomes armed within the ... structure ... with ... a dangerous weapon." Fla. Stat. § 810.02(2)(b) (2008). The appeals court noted that under Florida law "felony crimes of possession of forbidden substances or things require proof of guilty knowledge," and "[n]othing in section 810.02(2)(b) suggests that the legislature meant to dispense with the presumptive element of knowledge." *Barrett*, 983 So.2d at 796–97. The court concluded that "[n]o evidence demonstrate[d] that [the] defendant knew he had the firearm within immediate physical reach with ready access with the intent to use the firearm during the commission of the offense," and therefore he could not be charged with armed burglary. *Id.* at 797 (quotation omitted).

■ The facts of the present case are nearly identical to those of *Barrett*, and we find its reasoning persuasive. No evidence in the record demonstrates that respondents were aware that a gun was in the safe, and nothing about the safe itself suggested that it contained a gun. As the district court found, "[t]here must be some evidence showing knowledge or control of ... the weapon contained in the safe to justify subjecting [respondents] to the increased criminal sanctions of a First Degree Burglary Charge." Thus, the district court properly concluded that respondents could not be convicted of first-degree burglary—possession of a dangerous weapon because they did not knowingly possess the gun.[3]

## DECISION

We hold that Minnesota Statutes section 609.582, subdivision 1(b), requires proof that a defendant knowingly possessed a gun during the course of a burglary. Accordingly, the district court properly dismissed the first-degree burglary charges against respondents.

**Affirmed.**

---

**2.** We do not anticipate that the requirement of mens rea for possession of a dangerous weapon will necessarily be difficult for the prosecution to prove in a typical first-degree burglary case, especially given the doctrine of constructive possession.

**3.** Alternatively, the state argues that sufficient evidence in the record demonstrates that respondents knew they possessed a dangerous weapon. Because the state may not appeal from dismissal of a complaint for lack of probable cause based on insufficient evidence, we do not address this argument. *See State v. Duffy*, 559 N.W.2d 109, 111 (Minn.App.1997).