STATE of Minnesota, Appellant,

v.

Guillermo GARCIA–GUTIERREZ, Armando NMN Araiza, Aidan James Heine Mellgren, Terry Darnell Gilliam, Jr., and Jamie David Pintor–Velo, Respondents.

No. A12–2012.

Supreme Court of Minnesota.

April 2, 2014.

order deferred our decision on the motion, we now deny it.

Lori Swanson, Attorney General, Saint Paul, MN; and Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant Scott County Attorney, Shakopee, MN, for appellant.

Sharon E. Jacks, Minneapolis, MN, for respondents.

## OPINION

GILDEA, Chief Justice.

Respondents were charged with first-degree burglary under Minn.Stat. § 609.582, subd. 1(b) (2012), in connection with the break in of a home in Shakopee. During the burglary, respondents allegedly stole a locked safe that contained a .45–caliber handgun. The district court dismissed the first-degree burglary charges for lack of probable cause, holding that a person commits first-degree burglary under section 609.582, subdivision 1(b), which requires possession of a dangerous weapon during the burglary, only if the person knows that he possesses the dangerous weapon. Because we conclude that subdivision 1(b) does not require knowing possession, we reverse.

In June 2012, a home in Shakopee was broken into and various items were taken, including a locked safe containing a .45–caliber handgun and ammunition.[1] Later that same evening, police in Prior Lake responded to a report that a male with a handgun was slamming a box into the ground. Police found respondents Guillermo Garcia–Gutierrez, Armando Araiza, Jamie David Pintor–Velo, and Aidan James Heine Mellgren at an apartment, along with most of the property that had been stolen during the Shakopee burglary, including the now opened safe and the handgun inside the safe.

The State charged respondents with one count of first-degree burglary for violation of Minn.Stat. § 609.582, subd. 1(b). In this case, subdivision 1(b) aggravates what would otherwise be a second-degree burglary to a first-degree offense if the burglar possesses a "dangerous weapon" when "entering or at any time while in the building." The State alleged that respondents possessed the stolen handgun that was locked in the safe during the burglary. See Minn.Stat. § 609.02, subd. 6 (2012) (defining "[d]angerous weapon" to include "any firearm, whether loaded or unloaded").[2]

---

1. Because this appeal involves pretrial proceedings, the facts are taken from the complaint, record, and exhibits that were introduced at the omnibus hearing. The facts are meant to provide context and have not been proven at trial. *See State v. Lessley*, 779 N.W.2d 825, 828, n. 1 (Minn.2010).

2. The State also charged respondents with one count of second-degree burglary, for violation of Minn.Stat. § 609.582, subd. 2(a)(1)

Respondents moved to dismiss the first-degree burglary charge for lack of probable cause. Respondents argued that there was no evidence they "possessed" the gun in the safe because they were not even aware that the gun was in the safe until after the burglary was completed, when they forced the safe open.

The district court granted the motion. The court held "there must be proof, as an element of possession of the gun, that a defendant knowingly possessed the gun, either physically or constructively." Because the court determined there was no evidence to support a finding that respondents had knowledge or control of, or immediate access to, the gun contained in the safe, the court dismissed the first-degree burglary charge.

█ The State appealed, and the court of appeals affirmed. *State v. Garcia–Gutierrez,* 830 N.W.2d 919, 925 (Minn.App. 2013). Noting that strict liability offenses—that is, criminal offenses that dispense with any mens rea[3] requirement—are disfavored, the court of appeals agreed with the district court that Minn.Stat. § 609.582, subd. 1(b), must be construed to require knowing possession of a dangerous weapon. *Id.* at 922, 925. We granted the State's petition for review.

█ On appeal to our court, the parties disagree over the interpretation of section 609.582, subdivision 1(b). The interpretation of a statute is a legal question we review de novo. *State v. Leathers,* 799 N.W.2d 606, 608 (Minn.2011). The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (2012). If the language of the statute is clear and free of all ambiguity, we apply the plain meaning of the statute. *Leathers,* 799 N.W.2d at 608. A statute is "ambiguous when the language therein is subject to more than one reasonable interpretation." *Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). We are to "construe words and phrases according to rules of grammar and according to their most natural and obvious usage unless it would be inconsistent with the manifest intent of the legislature." *Id.*

I.

█ Turning to the parties' arguments, the State contends that the statute is unambiguous and that under the plain language of the statute, the mens rea required to commit the charged offense is the burglar's entry into a building "without consent and with intent to commit a crime." *See* Minn.Stat. §§ 609.582, subds. 1, 2 (first- and second-degree burglary; intent to commit any "crime"); 609.582, subd. 3 (third-degree burglary; intent to "steal or commit any felony or gross misdemeanor"); and 609.582, subd. 4 (fourth-degree burglary; intent to commit "a misdemeanor other than to steal"). *See also State v. Golden,* 86 Minn. 206, 208, 90 N.W. 398, 399 (1902) (noting that "[t]he gist of [the] offense [of burglary] is the breaking and entering any building with intent to

---

(2012) (burglary of a dwelling); two counts of theft, for violation of Minn.Stat. § 609.52, subds. 2(a)(1), 3(1), 3(3)(a) (2012); and one count of crime committed for the benefit of a gang, for violation of Minn.Stat. § 609.229, subds. 2, 3(a) (2012). Two respondents were also charged with possession of a pistol by someone ineligible to possess a firearm, for violation of Minn.Stat. § 624.713 (2012). Proceedings on the charges other than first-degree burglary are still pending in the district court.

**3.** "Mens rea is the element of a crime that requires 'the defendant know the facts that make his conduct illegal.'" *State v. Ndikum,* 815 N.W.2d 816, 818 (Minn.2012) (quoting *Staples v. United States,* 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)).

commit a crime therein"). The State contrasts the phrase "without consent and with intent to commit a crime" with the language that elevates the crime of burglary to a first-degree offense. Specifically, the State notes that in the provision elevating the burglary to first-degree when the burglar possesses a dangerous weapon upon "entering or at any time while in the building," there is no mens rea attached to the requirement of possession. The State argues that the district court therefore erred in reading an additional mens rea requirement into the first-degree burglary statute.[4] The State acknowledges that we have, in some limited instances, held that a mens rea element must be implied in particular criminal statutes notwithstanding the absence of any express mens rea language in those statutes. *See State v. Ndikum*, 815 N.W.2d 816, 818, 821 (Minn.2012) (holding that possession of a pistol in public requires knowing possession); *In re C.R.M.*, 611 N.W.2d 802, 810 (Minn.2000) (holding that the crime of possession of a knife on school grounds requires that the defendant know that he possesses the knife). But the State contends these cases are not relevant to our analysis here because, unlike the criminal offenses at issue in *Ndikum* and *C.R.M.*, burglary of any degree requires proof of mens rea and is therefore not a strict liability crime.

For their part, respondents argue that our precedent establishes that the statute is ambiguous. *See Ndikum*, 815 N.W.2d at 818–19; *In re C.R.M.*, 611 N.W.2d at 805; *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975) (holding that possession of a controlled substance is a crime only if the defendant knowingly possesses the substance and has knowledge of the nature of that substance). Respondents also contend that construing the burglary statute to require knowing possession of a dangerous weapon is consistent with the statute as a whole and with the underlying legislative purpose, which respondents contend is to reduce the risk of serious injury or death during a burglary. Respondents assert that a burglar's unknowing possession of a firearm creates no such increased risk. Respondents also argue that where, as here, there are two reasonable interpretations of an ambiguous statute, the rule of lenity requires that we resolve the ambiguity in respondents' favor, by adopting their contention that the statute requires proof of knowing possession of the gun. Finally, respondents argue that to interpret the statute as not requiring knowing possession would lead to absurd results.

### A.

■ We agree with the State that Minn. Stat. § 609.582, subd. 1(b), is not ambiguous. In order to commit first-degree burglary as charged in this case, a defendant must not only commit burglary—an unlawful entry into a building coupled with commission of a crime or intent to commit a crime inside—he must also "possess[ ], when entering or at any time while in the building, . . . a dangerous weapon." Minn. Stat. § 609.582, subd. 1(b). There is nothing in the language defining first-degree burglary that imposes a mens rea requirement of any kind with respect to the element of possession.

---

4. The State also argues that even if the statute requires knowing possession, there was sufficient evidence to establish probable cause that respondents knowingly possessed the weapon. ·The State did not raise this issue in its petition for further review, and so we will not address this issue. *See Tatro v. Univ. of Minn.*, 816 N.W.2d 509, 515 (Minn.2012) ("Although we have the discretion to consider additional issues, we generally will not address issues that were not specifically raised in the petition for review.").

In contrast to the underlying crime of burglary, the portion of the statute addressing possession of a dangerous weapon in subdivision 1(b) is silent with respect to the actor's mental state. The Legislature did not use a term such as "intentionally," or some form of the verbs "know" or "believe," when setting forth the element of possession of a dangerous weapon. Absence of such language indicates that the Legislature did not intend to require an additional mens rea for possession of a dangerous weapon. *See State v. Evans*, 756 N.W.2d 854, 875–76 (Minn.2008) (noting that because "there is no language in the statute indicating that knowledge of the victim's status as a peace officer is required," knowledge that a person is a peace officer is not required to be convicted of first-degree murder for killing a peace officer). And the rules of statutory interpretation forbid us from adding words to a statute that the Legislature omitted. *Phelps v. Commonwealth Land Title Ins. Co.*, 537 N.W.2d 271, 274 (Minn.1995); *see also State v. Moseng*, 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (1959) (noting that when a question of statutory construction involves a failure of expression rather than an ambiguity of expression, we "are not free to substitute amendment for construction and thereby supply the omissions of the legislature"). Accordingly, we conclude from the plain language of subdivision 1(b) that the statute does not impose an additional mens rea requirement for the element of possession of a dangerous weapon.

### B.

Respondents suggest, however, that it is precisely because Minn.Stat. § 609.582, subd. 1(b), is silent with respect to the mental state required for possession of a dangerous weapon that the statute is ambiguous, and they urge us to imply a knowledge requirement. Respondents rely on our prior decisions holding that statutes imposing liability for possession of forbidden substances or things, including firearms and other weapons, require proof of knowledge of that possession even though those statutes did not contain language indicative of mens rea. *See Ndikum*, 815 N.W.2d at 818 (possession of a pistol in public); *In re C.R.M.*, 611 N.W.2d at 809 (possession of a knife on school grounds).[5] Because we have implied a knowledge requirement in other weapon possession statutes, respondents urge us to likewise imply such a requirement in the context of the burglary statute. Indeed, respondents argue that in every case in which we have addressed statutes involving gross misdemeanor and felony weapon possession, we have concluded that the statute required the knowing possession of the weapon.

But respondents fail to recognize a crucial distinction between this case and cases such as *Ndikum* and *C.R.M.* In those other cases, it was the act of possession itself that was a crime. Were no mens rea

---

5. In addition to citing *Ndikum* and *C.R.M.*, respondents argue that possession must be knowing based on a decision by a Florida intermediate appellate court, *Barrett v. State*, 983 So.2d 795, 796 (Fla.Dist.Ct.App.2008). In *Barrett*, the court concluded that the defendant, who had stolen a safe and later found a gun inside, was not "armed," under Florida's first-degree burglary statute. *Id.* at 796–97. The statute at issue in *Barrett* provides in pertinent part that burglary is a felony of the first degree if the offender "[i]s or becomes armed within the dwelling ... with ... a dangerous weapon." Fla. Stat. § 810.02(2)(b) (2013). Armed is defined as "[e]quipped with a weapon," *Black's Law Dictionary* 123 (9th ed.2009), and thus, the Florida statute is materially different than the Minnesota statute and is not helpful in determining if there is a knowledge requirement for "possession" under the Minnesota statute.

implied, the crimes at issue in those cases would have been strict liability crimes. *Ndikum*, 815 N.W.2d at 819–20. Criminal offenses that impose strict criminal liability are disfavored. *In re C.R.M.*, 611 N.W.2d at 805. We recognize that the " 'existence of a mens rea is the rule of, rather than the exception to,' common law crimes." *Id.* at 806 (quoting *Staples v. United States*, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). Accordingly, we have taken "great care … to avoid interpreting statutes as eliminating mens rea where doing so criminalizes a broad range of what would otherwise be innocent conduct." *Id.* at 809 (citing *Staples*, 511 U.S. at 610, 114 S.Ct. (1793)). Because strict liability crimes are disfavored, and in the absence of clear legislative intent to the contrary, we concluded in *Ndikum* and *C.R.M.* that some form of mens rea "may be read into common law crimes even where the statute does not explicitly require it." *Id.* at 806 (citing *Staples*, 511 U.S. at 605, 114 S.Ct. 1793), *see also Ndikum*, 815 N.W.2d at 818–19.[6] In adopting this rule, we have been guided by the principle that "if criminal liability, particularly gross misdemeanor or felony liability, is to be imposed for conduct unaccompanied by fault, the legislative intent to do so should be clear." *In re C.R.M.*, 611 N.W.2d at 809 (citing *State v. Neisen*, 415 N.W.2d 326, 329 (Minn.1987)).

Section 609.582, subdivision 1(b), does not implicate that principle because the statute does not impose strict liability. As discussed above, section 609.582 has a mens rea for the underlying offense of burglary. *See* Minn.Stat. § 609.582. The first-degree burglary statute therefore does not create a strict liability crime.

And, unlike the possession cases on which respondents rely, the crime here is not possession; the crime is burglary. Possession of a dangerous weapon determines the severity of the punishment, not whether a crime has been committed. Accordingly, cases that address strict liability crimes, such as *Ndikum* and *C.R.M.*, are not controlling.

More helpful to the analysis is *State v. Benniefield*, 678 N.W.2d 42 (Minn.2004). The defendant in that case was charged with possession of a controlled substance in a school zone. *See* Minn.Stat. § 152.023, subd. 2(4) (2012). The district court granted the State's pretrial motion to preclude Benniefield from arguing that intent to be in a school zone or knowledge of being in the school zone was a necessary element of the crime. *Benniefield*, 678 N.W.2d at 45. On appeal, Benniefield argued that the dramatic increase in the penalty associated with possession of a controlled substance in a school zone compelled the court to imply the requirement that the State prove the intent to possess in that particular location. *Id.* at 48. The State argued in response that the plain language of the statute did not require proof of an intent to be in a school zone. *Id.* The State further contended that the statute already required proof of a defendant's mens rea, the intent to possess an illegal drug, and argued that a mens rea requirement need not attach to every element of a crime. *Id.*

We rejected Benniefield's argument that he had to know he was in a school zone in order to commit the offense at issue. *Id.* at 48–49. We acknowledged that we had implied a mens rea requirement for the

---

6. We have applied the same rule in cases involving the possession of controlled substances. *See State v. Strong*, 294 N.W.2d 319–20 (Minn.1980) (discussing the introduction of a controlled substance or dangerous weap- on into a state correctional facility); *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975) (discussing possession of a controlled substance).

crime of possession of a controlled substance in *Florine,* 303 Minn. at 104, 226 N.W.2d at 610. But having done so, we saw "no basis for requiring the [S]tate to demonstrate an additional mens rea with respect to location." *Benniefield,* 678 N.W.2d at 48. We reasoned that "[t]he possessor of the illegal drug who is already on notice that his conduct is criminal can reasonably be expected to assume the risk that he might enter a location that will make the consequences of his crime more severe." *Id.* (citing *Polk v. State,* 683 N.E.2d 567, 572 (Ind.1997)). We concluded that because mens rea was required with respect to the element of possession, no additional mens rea was required for the school zone penalty component of the statute. *Id.* at 48–49. We reach a similar conclusion here.

As in *Benniefield,* mens rea is already required for the underlying crime—burglary; possession of a weapon merely enhances the severity of the offense. Minn. Stat. § 609.582, subd. 1. Consistent with our analysis in *Benniefield,* we conclude here that the burglary statute does not require an additional mens rea for possession of a dangerous weapon.

### C.

In urging us to reach a different conclusion as to the statute's interpretation, respondents note that we must construe subdivision 1(b) within the context of Minn. Stat. § 609.592. Construing the statute as a whole, respondents argue, further supports the lower courts' conclusion that "possession" means "knowing possession." Specifically, respondents note that section 609.582, subdivision 1(b), also applies to a burglar's possession of "any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon." Minn.Stat. § 609.582, subd. 1(b). Respondents argue that this language "necessarily implies" that a defendant know of the item's presence; in order to use or fashion an item, a defendant must first know that he possesses the item. Respondents assert that construing the "dangerous weapon" phrase with the "use or fashion" phrase demonstrates the Legislature's intent that possession of a dangerous weapon must be knowing.

We agree with respondents that we must construe the burglary statute "as a whole," and that the words and phrases of the statute are to be understood in light of their context. *State v. Gaiovnik,* 794 N.W.2d 643, 647 (Minn.2011). But reading subdivision 1(b) as a whole only confirms our conclusion that knowledge is not required for the possession of a dangerous weapon component of the first-degree burglary statute.

The Legislature addressed three distinct possession situations in subdivision 1(b): possession of (1) a dangerous weapon, (2) any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, *or* (3) an explosive. *See* Minn.Stat. § 609.582, subd. 1(b). The Legislature's use of "or" between the three situations "signifies the distinction between" the three situations. *State v. Loge,* 608 N.W.2d 152, 155 (Minn.2000); *see also Aberle v. Fairbault Fire Dep't Relief Ass'n,* 230 Minn. 353, 360, 41 N.W.2d 813, 817 (1950). Respondents therefore are wrong to suggest that simply because one of these three alternative scenarios may require the defendant's knowledge of the item at issue, the same must be true for the other scenarios. Rather, reading the provision as a whole, it is clear that the Legislature did not intend to require knowing possession when there is danger inherent in the mere possession of the item during the commission of a burglary, such as when the burglar possessed a "dangerous weapon."

### D.

Finally, respondents argue that even if the statute is unambiguous, we must still interpret the statute to require knowing possession in order to avoid a construction that leads to an absurd result. Respondents cite *Wegener v. Commissioner of Revenue*, 505 N.W.2d 612, 617 (Minn.1993), to support the proposition that we are "obliged to reject a construction that leads to absurd results or unreasonable results which utterly depart from the purpose of the statute." The maximum sentence for a person convicted of first-degree burglary is 20 years in prison. Minn.Stat. § 609.582, subd. 1. Respondents observe that but for their alleged "possession" of a dangerous weapon they would be subject at most to prosecution for second-degree burglary of a dwelling, *see* Minn.Stat. § 609.582, subd. 2(a)(1), for which the maximum sentence is 10 years in prison. Respondents contend that the Legislature could not have intended the drastic consequence that they be potentially subject to twice the amount of prison time, based solely upon the presence of a firearm of which they were entirely unaware. We are not persuaded.

The rule discussed in *Wegener* is "not available to override the plain language of a clear and unambiguous statute, except in an exceedingly rare case in which the plain meaning of the statute 'utterly confounds' the clear legislative purpose of the statute." *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 651 (Minn.2012) (citing *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 639 (Minn.2006)). We have only expressly applied the "rare case" exception one time. *Id.* at 651–52. This case is not an exceptional case, and the plain meaning of the statute does not compel an absurd result. *See id.* at 652 ("The plain language of [the statute] comports with the purpose of the Act, and therefore does not lead to an absurd result."). This is true because even unknowing possession of a dangerous weapon increases the risk of danger. For example, a burglar could realize he possesses the weapon during an altercation or the weapon could discharge during a struggle even if the burglar is unaware of its presence. It is not absurd for the Legislature to provide that those involved in the creation of greater danger may be subject to greater penalty.

In sum, we hold that first-degree burglary possession of a dangerous weapon, under Minn.Stat. § 609.582, subd. 1(b), is not ambiguous and does not include a mens rea requirement with respect to a defendant's possession of a dangerous weapon.[7] The district court therefore erred in reading an additional knowledge requirement into the statute. We reverse and remand to the district court for further proceedings.

Reversed.

WRIGHT, Justice (concurring).

Based on our case law and the structure of Minn.Stat. § 609.582 (2012), I concur with the conclusion of the majority that the State is not required to prove knowledge of possession as an element of burglary in the first degree. I write separately, however, to express my concern that, under the unusual factual circumstances

---

7. Minnesota Statutes § 609.582, subd. 1(b), requires a burglar to possess a dangerous weapon. Because the parties briefed only the narrow issue of mens rea, as decided by the court of appeals, and did not address whether respondents committed the actus reus of "possession" of the weapon, we express no opinion on that issue. Moreover, because we conclude that Minn.Stat. § 609.582, subd. 1(b), is not ambiguous, we do not reach respondents' arguments based on the canons of statutory construction set forth in Minn.Stat. § 645.16 (2012), or the rule of lenity.

presented here, our conclusion does not serve the public policy objectives underlying Minn.Stat. § 609.582, subd. 1(b).

One of the express purposes of our criminal laws is "to protect the public safety and welfare by preventing the commission of crime through the deterring effect of the sentences authorized." Minn.Stat. § 609.01, subd. 1(1) (2012). The Legislature clearly intended Minn.Stat. § 609.582, subd. 1(b), to deter the commission of burglary with a dangerous weapon, whether the perpetrator brought the weapon to the scene or picked up the weapon during the commission of the burglary. Presumably, the Legislature concluded that, when a burglar possesses a dangerous weapon, the burglar is more likely to harm law enforcement officers or innocent bystanders. Providing harsher punishments for burglary committed with a dangerous weapon, therefore, serves the State's interest in protecting public safety. The Legislature also may have intended to deter burglars from stealing guns in an effort to prevent those guns from being used in other crimes, which similarly would promote the State's interest in protecting public safety. But no threat of punishment can deter a person from acting unknowingly.

Here, prosecuting Garcia–Gutierrez and his co-defendants for burglary in the first degree without requiring evidence that they knew the safe contained a gun serves no public safety purpose. The defendants did not have access to the gun during the burglary, so the gun posed no risk of injury to others. And unless the defendants knew there was a gun in the safe, no threat of more severe punishment for stealing a weapon could have deterred

them from stealing the safe. Therefore, although I agree that Minn.Stat. § 609.582, subd. 1(b), permits the State to prosecute these defendants for burglary in the first degree, I question the decision to do so in these unusual circumstances. In light of the other charges brought by the State,[1] there is ample opportunity for the State to prosecute these defendants for their alleged intentional conduct.

PAGE, J (concurring).

I join in the concurrence of Justice Wright.

---

1. The State also charged these defendants with one count of burglary in the second degree, in violation of Minn.Stat. § 609.582, subd. 2(a)(1) (2012); two counts of theft, in violation of Minn.Stat. § 609.52, subds. 2(a)(1), 3(1), 3(3)(a) (2012); and one count of crime committed for the benefit of a gang, in violation of Minn.Stat. § 609.229, subds. 2, 3(a) (2012). Two of the defendants are charged with possession of a pistol by someone ineligible to possess a firearm, in violation of Minn.Stat. § 624.713 (2012).