*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0305**

Jose Socorro Ortiz, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 5, 2015
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-05-075625

David L. Wilson, Erica E. Davis, Anna Scholl, Wilson Law Group, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Justin A. Wesley, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Cleary, Chief Judge; and Schellhas, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS, Judge**

We are asked whether the district court accurately held that it lacks the authority to reduce the term of Jose Ortiz's expired criminal sentence so that Ortiz could avoid being

the subject of potential deportation. Ortiz, who pleaded guilty to obstruction of legal process in 2006 and received a sentence that expired in 2008, challenges the district court's decision to deny his motion to modify his expired sentence. He argues that the district court had both statutory authority and inherent authority to grant the motion. We affirm because Ortiz's motion is untimely under the postconviction statute and the rules of criminal procedure and because the district court lacks the inherent authority to modify expired sentences outside the avenue prescribed by the legislature.

## FACTS

Ortiz was born in Mexico and became a legal permanent resident of the United States when he was fifteen. Three years later, in 2005 he had a run in with police and then pleaded guilty to gross misdemeanor obstruction of legal process under Minnesota Statutes section 609.50, subdivision 2(2) (2004). The district court sentenced Ortiz to 365 days in the workhouse, 320 of which were stayed for two years on probationary conditions. The federal government follows a policy of deporting noncitizens who have felony convictions. Although Ortiz's conviction is a nonfelony gross misdemeanor under Minnesota law, the Immigration and Nationality Act defines his crime as an aggravated felony because it involved violence and could have resulted in a sentence of 365 days of incarceration. 8 U.S.C. § 1101(a)(43)(F) (2004 & Supp. I 2005); 18 U.S.C. § 16(a) (2005). Five years after his sentence expired, the United States Department of Homeland Security followed federal policy and began proceedings to deport Ortiz based on his 2006 conviction.

2

Ortiz moved the district court to reduce his 365-day expired sentence by one day to avoid deportation. Ortiz relied on rule 27 of the Minnesota Rules of Criminal Procedure, arguing that it grants district courts the power to modify sentences at any time. He alternatively asserted that the court had the inherent authority to reduce his gross misdemeanor sentence in the interests of justice. The district court denied Ortiz's motion. It determined that it lacked the authority to modify the sentence and that, even if it generally had this authority, it would be precluded from altering Ortiz's sentence because immigration consequences are not an appropriate sentencing factor. Ortiz's appeal follows.

## D E C I S I O N

Ortiz challenges the district court's decision not to reduce his sentence. We address his challenge in light of rule 27, the postconviction statute, and the district court's inherent authority. We do not address the district court's decision that immigration consequences cannot influence sentencing.

## I

Ortiz argues that his motion was properly before the district court under rule 27.03. The parties debate the meaning of the rule:

> The court may at any time correct a sentence not authorized by law. The court may modify a sentence during a stay of execution or imposition of sentence if the court does not increase the period of confinement.

Minn. R. Crim. P. 27.03, subd. 9. Ortiz asks that we construe the rule as authorizing the district court to modify his sentence so long as the new sentence does not increase a

period of confinement. In other words, he would have us borrow the phrase "any time" from the rule's first sentence and incorporate it into the second sentence. We interpret the rules of criminal procedure de novo. *Ford v. State*, 690 N.W.2d 706, 712 (Minn. 2005). When interpreting clear and unambiguous language, we follow the rules of grammar and define words according to their natural and obvious usage. *State v. Garcia-Gutierrez*, 844 N.W.2d 519, 521 (Minn. 2014).

Following the most natural and obvious reading of the rule, the two sentences operate independently, each providing a different form of relief under different circumstances. This plain-language reading has already been confirmed in the caselaw. *See State v. Hockensmith*, 417 N.W.2d 630, 632–33 (Minn. 1988). Under the rule's first sentence, district courts are not temporally constrained from correcting sentences "not authorized by law," being free to correct them "at any time." *Id.* at 633. One can therefore successfully invoke this provision only when his sentence is unauthorized. *Id.* This includes only a narrow class of sentencing challenges, such as, for example, when a defendant was unlawfully sentenced for multiple offenses arising out of a single behavioral incident in violation of Minnesota Statutes section 609.04 (2006), *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007), or when the district court unlawfully stays a sentence in the face of a statute that mandates an executed sentence, *Bangert v. State*, 282 N.W.2d 540, 547 (Minn. 1979), or when the district court unlawfully sentences the defendant based on an incorrect criminal history score, *State v. Maurstad*, 733 N.W.2d 141, 147 (Minn. 2007), or when the defendant's sentence constituted an unlawful upward departure, *State v. Amundson*, 828 N.W.2d 747, 752–53 (Minn. App. 2013).

4

But the rule's first sentence does not apply when the district court imposes a lawful sentence. *Hockensmith*, 417 N.W.2d at 633. The challenger must then rely on the rule's second sentence, but that part of the rule applies only if "the defendant has not yet begun to serve [his sentence]—that is during either a stay of imposition or stay of execution of sentence." *Id.* (quotation omitted). If the defendant has already begun serving his sentence, the provision no longer applies. *Reeseman v. State*, 449 N.W.2d 489, 490 (Minn. App. 1989).

The rule's language on its face and as interpreted in the caselaw convinces us that Ortiz cannot successfully rest his challenge on it. The rule's first provision does not apply because Ortiz's 365-day sentence was authorized by law. *See* Minn. Stat. § 609.50, subd. 2(2) (providing for penalty of imprisonment for not more than one year). Ortiz does not assert any statutory or related legal error; he contends only that the district court should have exercised its discretion differently. The rule's second provision does not apply because Ortiz's challenge comes too late. Because he filed his motion nearly five and a half years after his sentence expired rather than "during a stay of execution or imposition of sentence," he is tardy. *See* Minn. R. Crim. P. 27.03, subd. 9; *see also Hockensmith*, 417 N.W.2d at 633.

## II

The postconviction statute may support a sentence challenge outside the scope of rule 27. *See Johnson v. State*, 801 N.W.2d 173, 176 (Minn. 2011). A claim arises by statute if direct appellate relief is no longer available, the petitioner argues that his conviction violated his rights, and the claim is timely. Minn. Stat. § 590.01, subds. 1(1), 4

5

(2012). The one seeking postconviction relief bears the burden of establishing these elements by a preponderance of the evidence. *State v. Rainer*, 502 N.W.2d 784, 787 (Minn. 1993).

Ortiz cannot meet this burden under the statute because his challenge is untimely. Postconviction claims generally fail if they are not filed within two years after the entry of the conviction if the defendant files no direct appeal. Minn. Stat. § 590.01, subd. 4(a)(1). Ortiz did not directly appeal, and judgment of conviction was entered in June 2006. His petition was filed in December 2013, years after the statute's two-year deadline. An untimely petition may be heard if it meets one of five statutory exceptions. *Id.*, subd. 4(b). The first four exceptions plainly do not apply here. This leaves only the fifth exception, which acts as a catch-all provision. Under it, the postconviction petition is excepted from the two-year deadline when "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." *Id.*, subd. 4(b)(5). But this interests-of-justice exception applies only when a petitioner cites an injustice that caused him to miss the deadline. *Sanchez v. State*, 816 N.W.2d 550, 557 (Minn. 2012). Ortiz does not cite an injustice that caused him to miss the deadline. His postconviction claim rests instead on the immigration consequences resulting from his sentence. These consequences did not cause his delayed challenge. And because he knew or should have known that the claim existed as soon as he was sentenced, his sentencing was the triggering event for the deadline. *See id.* at 560. The claim is statutorily untimely.

## III

We turn finally to Ortiz's argument that he effectively filed his claim with the district court, which, he maintains, has the inherent authority apart from the temporally binding rules and statutes to modify sentences. The supreme court rejected Ortiz's expansive reading of the inherent powers of courts more than thirty years ago:

> This court, and the vast majority of other courts considering the issue, have determined that courts have no inherent authority to impose terms or conditions of sentence for criminal acts and that the power to prescribe punishment for such acts rests with the legislature. . . . [T]he legislature may restrict the exercise of judicial discretion in sentencing . . . . It may also grant the court power to suspend a sentence and may limit such power to certain cases and deny it as to others.

*State v. Olson*, 325 N.W.2d 13, 17–18 (Minn. 1982). There may be some theoretical weight to Ortiz's argument that, in the absence of legislative prohibition, courts retain inherent authority to govern "purely judicial functions." But the argument cannot persuade because modifying a sentence "is an operation of the rules of criminal procedure, not inherent judicial power." *Reeseman,* 449 N.W.2d at 490–91.

Ortiz's argument is also foreclosed indirectly by the legislature's limits on judicial sentencing power, *Olson*, 325 N.W.2d at 17–18, including time limits found in the postconviction statute. Because the postconviction remedy "takes the place of any other common law, statutory or other remedies which may have been available" previously for challenging a sentence, Minn. Stat. § 590.01, subd. 2 (2012), Ortiz's inherent-authority argument fails.

**Affirmed.**

7