*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2257**

State of Minnesota,
Respondent,

vs.

Clinton Robert Zenzius,
Appellant.

**Filed January 12, 2015
Affirmed
Reilly, Judge**

Beltrami County District Court
File No. 04-CR-13-381

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Timothy R. Faver, Beltrami County Attorney, Kristy (Burdick) Cariveau, Assistant County Attorney, Bemidji, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Chutich, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant Clinton Zenzius challenges the sufficiency of the evidence underlying his first-degree burglary conviction, arguing that he never possessed a dangerous weapon

nor intentionally aided another to possess a dangerous weapon. Because the evidence sufficiently supports the conviction, we affirm.

## FACTS

On February 5, 2013, respondent State of Minnesota charged Zenzius with second-degree burglary. Later, the state amended the complaint to include second-degree burglary, first-degree burglary—possession of a dangerous weapon, receiving stolen property—firearm, and receiving stolen property charges. At the trial, the jury heard the following testimony describing the events of the burglary.

During the early hours of February 3, 2013, Zenzius, Gary Stanton, and Kristopher Eng left their apartment on foot and walked through deep snow to P.G.'s property. There they searched an outbuilding located on P.G.'s property. Eventually, the three men approached P.G.'s single-wide mobile home. Zenzius opened the mobile home's back door, and the three men entered the home's living room.

Once inside, the defendants saw a safe and took it to a small room located in the middle of the mobile home. Stanton and Zenzius went through the contents of the safe, taking jewelry, old coins, and two-dollar bills. These items, in addition to other items found in the home, were placed into a duffle bag. While Stanton and Zenzius went through the contents of the safe, Eng found and removed two antique shotguns from a closet and laid them on the floor in the same room that Stanton and Zenzius were in. Zenzius saw the guns. While all three men were in the middle room, Stanton packed both guns into a camouflage gun case stolen from the mobile home.

2

The three men then searched the rest of the mobile home, taking a pillowcase and filling it with other items. After the men were done rummaging through the mobile home, they carried the bags of stolen goods and the guns from the mobile home. All three defendants were carrying either a bag or the gun case when they left the mobile home. Stanton initially carried the gun case out of the mobile home and through the woods. Eng then assisted Stanton in burying the gun case in the snow while Zenzius stood close by. The three men walked back to the apartment.

After investigating the burglary report, deputies with the Beltrami County Sheriff's Office found several sets of tracks in the snow leading from the mobile home into the woods. Two to three sets of distinct footprints were identified. The deputies followed these footprints directly to the apartment where the three men were staying. The deputies obtained a search warrant for the apartment, and the search revealed stolen property from the mobile home, in addition to a pair of wet boots with a tread pattern matching the tread of one of the tracks in the snow. All three men were arrested. A three-day jury trial was held in July 2013.

At the close of trial, the district court sua sponte questioned the proposed jury instructions on the first-degree burglary charge. The district court explained to counsel that it appeared, based on the testimony, that Zenzius never handled the firearm and subsequently questioned counsel regarding appropriate jury instruction language on this issue. The district court asked counsel for further research on "the discrepancy between the language in the burglary section and the proposed standard JIGs where the phrase --

the statute phrase 'directly' --'either directly or as an accomplice' was left out of the proposed JIGs."

The state, relying on *State v. Ostrem*, 535 N.W.2d 916, 922 (Minn. 1995), requested to amend the first-degree burglary charge to include aiding and abetting.[1] Counsel for the defense requested that the district court add the language of "either directly or as an accomplice" to the jury instructions. Defense counsel conceded that if the aiding and abetting charge was added, it would not have changed how the defense would have tried the case or its theory of defense.[2] The district court allowed the state to amend the complaint and submitted to the jury aiding and abetting liability on the first-degree burglary and receiving a stolen firearm charges. Neither party objected to the jury instructions.

The jury found Zenzius guilty of second-degree burglary, aiding and abetting first-degree burglary, aiding and abetting receiving a stolen firearm, and receiving stolen property. At the sentencing hearing, the district court sentenced Zenzius to 111 months on the aiding and abetting burglary in the first degree conviction and to 33 months on the receiving stolen property conviction. Zenzius appeals, requesting that he be resentenced on only the second-degree burglary conviction.

---

[1] In *Ostrem*, the supreme court rejected the appellant's contention that the district court did not have authority to sua sponte "amend" the complaint after the start of the trial and submit the case to the jury under an aiding and abetting theory. 535 N.W.2d at 922. The supreme court's reasoning highlighted the fact that aiding and abetting is not a separate substantive offense, and that the appellant could not show that his "substantial rights" were prejudiced because his entire defense relied on an alibi theory. *Id.* at 922-23.

[2] Prior to trial, Zenzius proffered an alibi defense for his location during the night of the burglary. Zenzius did not testify at trial.

4

# DECISION

Zenzius argues that a plain reading of the first-degree burglary statute only allows liability for first-degree burglary under Minn. Stat. § 609.582, subd. 1(b) (2012), to attach if the person charged with burglary possessed the dangerous weapon. Interpretation of a statute is a legal question, which we review de novo. *State v. Barrientos*, 837 N.W.2d 294, 298 (Minn. 2013). If the language of the statute is clear and free of all ambiguity, this court applies the plain meaning of the statute without "engaging in any further construction." *Id.* "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011).

Minnesota Statute section 609.582, subdivision 1, provides:

> Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, *either directly or as an accomplice*, commits burglary in the first degree . . . if:
> (a)    The building is a dwelling and another person, not an accomplice, is present in it when the burglar enters or at any time while the burglar is in the building;
> (b)    The *burglar* possesses, when entering or at any time while in the building, any of the following: a dangerous weapon, any article . . . reasonably believe[d] [by the victim] to be a dangerous weapon, or an explosive; or
> (c)    The burglar assaults a person within the building or on the building's appurtenant property.

(Emphasis added.) Zenzius supports his interpretation of the first-degree burglary statute by comparing the plain language of the general definition of burglary conduct and the

5

aggravating element at issue. He asserts that because the term "accomplice" is not included in the aggravating element, this omission "shows that the burglary statute does not contemplate first-degree liability based on another person's possession of a dangerous weapon."

This argument ignores the inclusion of the aggravating factor as a subsection to the general definition of the crime of burglary. Subdivision 1 establishes when a burglary has occurred and dictates who is guilty of the burglary: Whoever enters a building without consent with the intent to commit a crime or commits a crime directly or as an accomplice. *State v. Golden*, 86 Minn. 206, 208, 90 N.W. 398, 399 (1902) (explaining "[t]he gist of [] [burglary] is the breaking and entering any building with intent to commit a crime therein"). This general burglary definition is found in all four subdivisions of the burglary statute and must be satisfied before any kind of liability may be imposed on the defendant. *See* Minn. Stat. §§ 609.582, subds. 1, 2 (first- and second-degree burglary; intent to commit any "crime"); 609.582, subd. 3 (third-degree burglary; intent to "steal or commit any felony or gross misdemeanor"); and 609.582, subd. 4 (fourth-degree burglary; intent to commit "a misdemeanor other than to steal").

The three subsections found within subdivision 1 of the burglary statute describe when the severity of the offense is enhanced to first-degree burglary: (1) when the burglarized building is an occupied dwelling, (2) when the burglar possesses a dangerous weapon, or (3) when the burglar commits an assault. *Id.*, subd. 1(a)-(c). Accordingly, a first-degree burglary can occur even in the absence of a dangerous weapon. Once a burglary is established, it follows that both the "direct" individual or the "accomplice"

6

individual is the burglar. Consequently, subsection 1(b) does allow for accomplice liability as it uses the broad term of "burglar," which requires an established burglary and makes no distinction between the "direct burglar" or the "accomplice burglar." Therefore, the plain language of Minn. Stat. § 609.582, subd. 1, contemplates liability for first-degree burglary when another individual possesses a dangerous weapon during the commission of a burglary.

## B.

Zenzius next claims that he cannot be guilty of aiding and abetting first-degree burglary because there is insufficient evidence to prove that he intentionally aided another's possession of a dangerous weapon. When considering an insufficient-evidence claim, this court analyzes the record to determine whether the evidence viewed in the light most favorable to the conviction would allow a reasonable jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, to find the defendant guilty. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012). "We assume the jury believed the State's witnesses and disbelieved any evidence to the contrary." *Id.*

To be guilty of aiding and abetting a crime, the defendant does not need to have participated actively in the commission of the crime. *Bernhardt v. State*, 684 N.W.2d 465, 477 (Minn. 2004). The element of "'intentionally aiding' embodies two important and necessary principles: (1) that the defendant knew that his alleged accomplices were going to commit a crime, and (2) that the defendant intended his presence or actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 805 (Minn.

7

2012). "Jurors can infer the necessary intent from factors including: defendant's presence at the scene of the crime, defendant's close association with the principal before and after the crime, defendant's lack of objection or surprise under the circumstances, and defendant's flight from the scene of the crime with the principal." *State v. Swanson*, 707 N.W.2d 645, 659 (Minn. 2006).

Zenzius argues that the evidence was insufficient to find that he aided and abetted because he did not assist in the transportation or concealment of the shotguns or bury the guns in the snow. Although the evidence supports the assertion that Zenzius did not physically handle the guns, this fact is not dispositive on appeal. By arguing that the first-degree burglary conviction cannot stand because he did not intentionally aid another's possession of a dangerous weapon, Zenzius reads an additional mens rea requirement into the first-degree burglary statute.

The supreme court recently addressed the mens rea requirement of section 609.582, subdivision 1(b). *State v. Garcia-Gutierrez*, 844 N.W.2d 519, 520 (Minn. 2014). In *Garcia- Gutierrez*, the state charged five defendants with first-degree burglary in connection with breaking into a home. *Id.* A locked safe containing a handgun was taken from the home. *Id.* The defendants did not open the safe until after the commission of the burglary, and no defendant had knowledge that there was a handgun in the safe. *Id.* at 520-21. The defendants moved to dismiss the first-degree burglary charge for a lack of probable cause. *Id.* at 521. The district court granted the motion. *Id.*

On appeal, the parties disputed whether section 609.582, subdivision 1(b), imposed an additional mens rea requirement for the aggravating element of possession of

a dangerous weapon. *Id.* In holding that the possession element of subdivision 1(b) of section 609.582 did not require an additional mens rea, the supreme court explained that "unlike the possession cases on which respondents rely, the crime here is not possession; the crime is burglary. Possession of a dangerous weapon determines the severity of the punishment, not whether a crime has been committed." *Id.* at 524.

Likewise, although liability for the crime of aiding and abetting was not at issue in *Garcia- Gutierrez*, the supreme court's analysis supports our conclusion that we cannot require an additional mens rea requirement for aiding and abetting the crime of first-degree burglary. *See id.* at 523 ("[W]e conclude from the plain language of subdivision 1(b) that the statute does not impose an additional mens rea requirement for the element of possession of a dangerous weapon."). In other words, to aid and abet first-degree burglary a defendant needs only to intend to further the commission of the burglary. A defendant's knowledge—or lack of knowledge—regarding the existence of a dangerous weapon during the burglary is not relevant to our inquiry. When the crime of burglary is committed, a defendant bears the risk of an enhanced penalty due to a codefendant's possession of a dangerous weapon. Accordingly, the relevant inquiry is whether Zenzius intentionally aided first-degree burglary (the crime) and not whether he intentionally aided the possession of a dangerous weapon (enhancement).

Here, the trial testimony establishes that: (1) Zenzius opened the back door to the mobile home; (2) Zenzius, Stanton, and Eng entered the mobile home, (3) Zenzius searched for and collected items to burglarize from the mobile home; (4) Zenzius was in the same small room as Eng and Stanton when the shotguns were removed from a closet

9

and packed into the camouflage gun case; (5) Zenzius saw the guns while in the mobile home; and (6) Zenzius carried a bag of stolen items from the mobile home. This testimony refutes Zenzius's assertion that he was unaware that his codefendants were stealing the antique shotguns and establishes that Zenzius intended his actions to further the crime of burglary. Because the evidence sufficiently establishes that Zenzius intentionally aided Eng and Stanton in the burglary of P.G.'s home and that Eng and Stanton possessed a dangerous weapon, we affirm the first-degree burglary conviction.

**Affirmed.**