**STATE of Minnesota, Appellant,**

v.

**Christian Chi NDIKUM, Respondent.**

**No. A10–1728.**

Supreme Court of Minnesota.

July 11, 2012.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for appellant.

William M. Orth, Minneapolis, MN, for respondent.

OPINION

MEYER, Justice.

We are asked to decide whether knowledge of possession of a pistol is an element of the crime of possession of a pistol in public, Minn.Stat. § 624.714, subd. 1a (2010). Respondent Christian Chi Ndikum was charged with possession of a pistol in public after he carried a briefcase containing a gun into a courthouse. At trial, Ndikum argued that he did not know the gun was in his briefcase. Ndikum requested that the district court instruct the jury that knowledge of possession is an element of the crime of possession of a pistol in public that the State must prove. The district court refused to so instruct the jury, and the jury found Ndikum guilty of the crime of possession of a pistol in public. The court of appeals reversed Ndikum's conviction, concluding that the State had to prove knowledge of possession of a pistol as an element of the crime of possession of a pistol. We affirm the court of appeals.

I.

Ndikum is a licensed attorney in the state of Minnesota with a law office in Minneapolis. In May 2009 several incidents in his neighborhood led Ndikum to fear for his and his family's safety. As a result, Ndikum obtained a permit from the Hennepin County Sheriff's Office to purchase a gun. When he purchased a gun on July 23, 2009, the gun dealer informed Ndikum that Ndikum could carry the gun between his home and office without obtaining a permit to carry the gun in public.

*See* Minn.Stat. § 624.714, subd. 9(3) (2010). Ndikum testified that he only carried the gun between his home and office because he did not have a permit to carry.

On September 9, 2009, Ndikum entered the Hennepin County Family Justice Center for a court hearing. As Ndikum's briefcase went through the X-ray scanner at the courthouse, a security officer noticed what looked like a revolver inside the briefcase. In a search of the briefcase, a bag containing Ndikum's gun was discovered. Ndikum admitted to owning the gun but maintains that he did not know the gun was in his briefcase on September 9.

Ndikum was charged by complaint with two counts: possession of a dangerous weapon within a courthouse complex, a felony, Minn.Stat. § 609.66, subd. 1g (2010), and possession of a pistol in public, a gross misdemeanor, Minn.Stat. § 624.714, subd. 1a. The complaint was later amended to add a third count: reckless handling of a gun, a misdemeanor, Minn.Stat. § 609.66, subd. 1(a)(1) (2010). Ndikum's wife testified at trial that she placed the gun in Ndikum's briefcase before Ndikum left home to go to work. Ndikum testified that he did not know the gun was in his briefcase when he entered the Family Justice Center.

Ndikum requested that the district court instruct the jury that knowledge is an element of both the felony and gross misdemeanor counts.[1] The court agreed to instruct the jury that an element of felony possession of a dangerous weapon in a courthouse is that "the defendant knew or

---

1. Ndikum requested that the jury be instructed that felony possession of a dangerous weapon in a courthouse required: "First, the defendant knew that he possessed a dangerous weapon within the Family Justice Center." Ndikum also requested that the jury be instructed that gross misdemeanor possession of a pistol in public requires the State to prove that "the defendant knew that he carried, held or possessed a pistol in a public area." Ndikum never argued that knowledge was an element of misdemeanor reckless handling of a dangerous weapon, and the court did not instruct the jury that knowledge or knowing possession was an element of that count.

818

reasonably should have known he possessed a dangerous weapon." On the gross misdemeanor possession of a pistol in public charge, the court merely instructed the jury that the defendant must have "carried, held, or possessed a pistol." The court did not instruct the jury that knowledge was an element of the gross misdemeanor charge. The jury found Ndikum not guilty of felony possession of a dangerous weapon in a courthouse and misdemeanor reckless handling of a weapon, but it found him guilty of gross misdemeanor possession of a pistol in public.

Ndikum appealed to the court of appeals and argued that the district court erred by refusing to instruct the jury that knowledge of possession of a pistol was an element of gross misdemeanor possession of a pistol in public. The court of appeals agreed and reversed Ndikum's conviction. *State v. Ndikum*, 802 N.W.2d 844, 849 (Minn.App.2011). The State appealed and we granted review.

## II.

We must determine whether knowledge of possession of a pistol is an element of Minnesota Statutes § 624.714 (2010), a gross misdemeanor offense prohibiting possession of a pistol in public without a permit. The statute provides:

A person, other than a peace officer, as defined in section 626.84, subdivision 1, who carries, holds, or possesses a pistol in a motor vehicle, snowmobile, or boat, or on or about the person's clothes or the person, or otherwise in possession or control in a public place, as defined in section 624.7181, subdivision 1, paragraph (c), without first having obtained a permit to carry the pistol is guilty of a gross misdemeanor. A person who is convicted a second or subsequent time is guilty of a felony.

Minn.Stat. § 624.714, subd. 1a. As written, the statute contains no express mens rea or knowledge requirement.

■ We review a district court's refusal to give a requested jury instruction for an abuse of discretion. *State v. Anderson*, 789 N.W.2d 227, 239 (Minn. 2010). The interpretation of a statute is a legal question we review de novo. *See State v. Leathers*, 799 N.W.2d 606, 608 (Minn.2011).

■ Mens rea is the element of a crime that requires "the defendant know the facts that make his conduct illegal." *Staples v. United States*, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). The mens rea requirement is "firmly embedded" in the common law. *Id.* "[T]he existence of a mens rea requirement is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence." *United States v. United States Gypsum Co.*, 438 U.S. 422, 436, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). Statutes that dispense with mens rea and "do not require the defendant to know the facts that make his conduct illegal" impose strict criminal liability. *Staples*, 511 U.S. at 606, 114 S.Ct. 1793. The Supreme Court of the United States has stated that "offenses that require no mens rea generally are disfavored." *Id.* (citing *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)).

■ Based on the strength of the common law rule requiring a mens rea element in every crime, the Supreme Court has determined that statutory silence is typically insufficient to dispense with mens rea. When a criminal statute is silent as to a mens rea requirement, this silence "does not necessarily suggest that Congress intended to dispense with a conventional mens rea element." *Staples*, 511 U.S. at 605, 114 S.Ct. 1793. Instead, some positive indication of legislative intent is

required to dispense with mens rea. *See id.* at 620, 114 S.Ct. 1793 (stating that if Congress had intended to impose strict liability, "it would have spoken more clearly to that effect"); *Gypsum,* 438 U.S. at 438, 98 S.Ct. 2864 ("Certainly far more than the simple omission of the appropriate phrase from the statutory definition is necessary to justify dispensing with an intent requirement.").

We incorporated the Supreme Court's reasoning in the case of *In re C.R.M.,* 611 N.W.2d 802, 805 (Minn.2000) ("[L]egislative intent to impose strict criminal liability must be clear."). We explained that " 'we are guided by the public policy that if criminal liability, particularly gross misdemeanor or felony liability, is to be imposed for conduct unaccompanied by fault, the legislative intent to do so should be clear.' " *Id.* at 809 (quoting *State v. Neisen,* 415 N.W.2d 326, 329 (Minn.1987)). This principle has led us to interpret statutes as containing a mens rea requirement even when they do not expressly contain one. *See, e.g., State v. Al–Naseer,* 734 N.W.2d 679, 688 (Minn.2007) (reading a mens rea requirement into statute that states "if the person causes the death of a human being . . . as a result of operating a motor vehicle . . . where the [person] who causes the accident leaves the scene of the accident," that person is guilty of criminal vehicular homicide); *State v. Arkell,* 672 N.W.2d 564, 568–69 (Minn.2003) (holding that misdemeanor offense of violating the Uniform Building Code was not a strict liability offense); *State v. Strong,* 294 N.W.2d 319, 320 (Minn.1980) (holding that a statute banning a person from bringing a firearm, weapon, or explosives into a correctional facility required the state to show that the defendant knew he possessed the item: "We see no reason why the element of scienter should be dispensed with in this situation and we are not convinced that the legislature intended to do so."); *State v.*

*Florine,* 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975) (reading a knowledge requirement into possession of a controlled substance statute); *State v. Siirila,* 292 Minn. 1, 10, 193 N.W.2d 467, 473 (1971) (reading a knowledge requirement into the offense of possession of a small amount of marijuana, a gross misdemeanor).

For example, in *C.R.M.* we determined that the felony offense of possession of a weapon on school property contained a mens rea element requiring the State to prove the defendant knew he possessed the weapon. 611 N.W.2d at 810. C.R.M. was convicted under Minn.Stat. § 609.66, subd. 1d (1998), for "possess[ing], stor[ing], or keep[ing]" a dangerous weapon on school property. *Id.* at 804–05. We determined that section 609.66, subdivision 1d, did not contain clear legislative intent to dispense with mens rea because "the legislature never explicitly indicated that it intended to create a strict liability offense." *Id.* at 808. We concluded that "[i]f it is the legislature's purpose to convict a student for a felony for the unknowing possession of a knife on school property, it should say so directly and unequivocally." *Id.* at 809.

The Supreme Court has recognized that in limited circumstances a legislature may dispense with mens rea through silence— in statutes creating "public welfare" offenses. *See Staples,* 511 U.S. at 606–07, 114 S.Ct. 1793. For such offenses, a legislature may "impose a form of strict criminal liability through statutes that do not require the defendant to know the facts that make his conduct illegal." *Id.* at 606, 114 S.Ct. 1793. When interpreting public welfare statutes, the Court "infer[s] from silence that Congress did not intend to require proof of mens rea to establish an offense." *Id.* This departure from the traditional requirement of mens rea as an element is justified because public welfare statutes regulate "potentially harmful or

injurious items," including "dangerous or deleterious devices or products or obnoxious waste materials." *Id.* at 607, 114 S.Ct. 1793 (citing *United States v. Int'l Minerals & Chem. Corp.,* 402 U.S. 558, 564–65, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971)). The items regulated by public welfare statutes are so dangerous that a defendant "should be alerted to the probability of strict regulation" and thus must "ascertain at his peril whether [his conduct] comes within the inhibition of the statute." *Id.* at 607, 114 S.Ct. 1793 (citing *United States v. Balint,* 258 U.S. 250, 254, 42 S.Ct. 301, 66 L.Ed. 604 (1922)). For example, the Court has recognized that statutes regulating dangerous drugs and hand grenades can properly be considered public welfare statutes. *See United States v. Freed,* 401 U.S. 601, 609, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (holding that the absence of a mens rea requirement under the National Firearms Act was valid because "one would hardly be surprised to learn that the possession of hand grenades is not an innocent act"); *United States v. Dotterweich,* 320 U.S. 277, 281, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (holding that the Food and Drugs Act of 1906, which regulated "impure and adulterated" foods and drugs, could properly dispense with mens rea and "throw this risk on shippers with regard to the identity of their wares"); *Balint,* 258 U.S. at 254, 42 S.Ct. 301 (holding that the Narcotic Act, which regulated sales of "dangerous drugs," did not contain a mens rea requirement).

In *Staples,* the Supreme Court considered the applicability of the public welfare doctrine in answering whether mens rea was an element of the National Firearms Act. The Act imposed criminal liability for failure to register certain types of firearms, and the Court concluded that the Act required that a defendant know the characteristics of his or her weapon that make it a "firearm" under the Act. 511

U.S. at 604, 114 S.Ct. 1793. The Act regulated fully automatic weapons, but Staples asserted that his weapon only fired semi-automatically and he was ignorant of any automatic-firing capability. *Id.* at 602–03, 114 S.Ct. 1793. The Court concluded that guns are not the type of dangerous items that should put an owner on notice of potential regulation. *Id.* at 610–11, 114 S.Ct. 1793. The Court contrasted gun ownership with activities like possessing hand grenades or selling dangerous drugs and stated that "there is a long tradition of widespread lawful gun ownership by private individuals in this country." *Id.* at 610, 114 S.Ct. 1793. Additionally, the Court stated that in the United States there is a "common experience that owning a gun is usually licit and blameless conduct"—the Court noted that half of American homes contain at least one firearm and the purchase of a firearm is a "simple transaction." *Id.* at 613–14, 114 S.Ct. 1793. Neither the dangerousness of guns nor the panoply of gun regulations persuaded the Court that the National Firearms Act is a public welfare statute. *See id.* at 610–11, 613, 114 S.Ct. 1793 (citing *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)). Construing the Act to impose strict liability would have potentially punished innocent actors who were ignorant of their weapon's characteristics, and the Court was hesitant to "criminalize a broad range of apparently innocent conduct." *Id.* at 610, 114 S.Ct. 1793.

To determine whether Minn.Stat. § 624.714, subd. 1a, is a public welfare statute, we must ask whether a gun possessor should have been on notice that possession of a gun was subject to strict regulation. We undertake a "careful and close examination of the statutory language" to determine whether the Legislature intended to create a strict liability

crime. *C.R.M.*, 611 N.W.2d at 805 (citing *State v. Orsello*, 554 N.W.2d 70, 74 (Minn. 1996)).

When read as a whole, Minn.Stat. § 624.714 demonstrates a legislative intent to promote the ability of law-abiding citizens to carry guns in public, not to restrict gun ownership and possession. First, the Legislature set forth its declaration of policy related to firearms in Minnesota Statutes § 624.711 (2010), which states:

> It is not the intent of the legislature to regulate shotguns, rifles and other long-guns of the type commonly used for hunting and not defined as pistols or semiautomatic military-style assault weapons, or to place costs of administration upon those citizens who wish to possess or carry pistols or semiautomatic military-style assault weapons lawfully, or to confiscate or otherwise restrict the use of pistols or semiautomatic military-style assault weapons by law-abiding citizens.

Nothing in this policy statement indicates that the firearms laws have the purpose of strictly regulating gun possession in public. Indeed, the Legislature has "recognize[d] and declare[d] that the second amendment of the United States Constitution guarantees the fundamental, individual right to keep and bear arms." Minn. Stat. § 624.714, subd. 22. Far from emphasizing the dangerousness of firearms, the Legislature explicitly emphasized the freedom of law-abiding citizens to carry guns.

Second, section 624.714 allows gun owners to possess guns in public without a permit under certain conditions. No permit is required to possess a gun in one's home, place of business, or on land that a person possesses. Minn.Stat. § 624.714, subd. 9(1). No permit is required to carry a pistol in public for the purpose of repair. Minn.Stat. § 624.714, subd. 9(2). A person may carry a pistol between his home and place of business without a permit. Minn. Stat. § 624.714, subd. 9(3). No permit is required to carry a pistol "in the woods or fields or upon the waters of this state" for hunting or target shooting. Minn.Stat. § 624.714, subd. 9(4). Finally, an unloaded pistol secured in a case may be transported in a vehicle without a permit. Minn.Stat. § 624.714, subd. 9(5). These exceptions to the permit requirement for public gun possession acknowledge that possessing guns in public is not strictly regulated.

A lack of strict regulatory intent is also evident in the limited enforcement mechanism available for private establishments wishing to ban guns on their premises under section 624.714. Private establishments may ban persons in possession of a pistol, with a permit, from their premises. Minn.Stat. § 624.714, subd. 17. Further, a person in possession of a pistol, with a permit, who remains at a private establishment knowing that the operator has banned guns on the premises may be ordered to leave the premises. Minn.Stat. § 624.714, subd. 17(a). But failing to leave the premises after being so ordered is treated only as a petty misdemeanor. *Id.* And the first such offense is punishable by a fine not to exceed $25. *Id.* Therefore, any person with a permit to carry a gun may take that gun into a private establishment, may refuse to leave when asked, and suffer only a $25 fine.

Although section 624.714 prohibits persons without permits from carrying a pistol in public, the inverse is also true: a person granted a permit to carry a pistol may carry it in public freely. Furthermore, it is not difficult to obtain a permit to carry a pistol. There is a statutory presumption in favor of granting a permit as long as the applicant meets the minimal requirements for eligibility. Minn.Stat.

§ 624.714, subd. 2. And even without a permit, gun owners may legally keep guns in their homes, transport guns to work, possess guns at work, hunt with guns, and keep guns in their vehicles. Our examination of section 624.714 leads us to conclude that the statute does not treat guns as highly dangerous devices and does not put gun owners on notice of stringent regulation. Section 624.714, subdivision 1a, is not a public welfare statute designed to strictly regulate a highly-dangerous device and, therefore, we conclude that mens rea was not dispensed with by the Legislature.

Our conclusion that section 624.714, subdivision 1a, does not dispense with the traditional mens rea requirement is supported by the penalty imposed for a violation of subdivision 1a. "Historically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with mens rea." *Staples,* 511 U.S. at 616, 114 S.Ct. 1793. While "small penalties" like fines and short jail sentences "logically complement[ ] the absence of a mens rea requirement," "imposing severe punishments for offenses that require no mens rea would seem incongruous." *Staples,* 511 U.S. at 616–17, 114 S.Ct. 1793. Historical treatment of public welfare offenses "suggest[s] that punishing a violation as a felony is simply incompatible with the theory of the public welfare offense." *Id.* at 618, 114 S.Ct. 1793. We have also considered the severity of the penalty for a crime to be an important factor in determining whether the Legislature intended to dispense with mens rea as an element of that crime. *See C.R.M.,* 611 N.W.2d at 806–07.

Because a felony-level punishment is incompatible with the theory of a public welfare offense, it is significant that a violation of section 624.714, subdivision 1a, is a felony offense in some circumstances.

The first violation for carrying a pistol in public without a permit is a gross misdemeanor. Minn.Stat. § 624.714, subd. 1a. Every subsequent violation is a felony. *Id.* The enhancement of subsequent offenses to felony punishment is evidence that section 624.714, subdivision 1a, is not a public welfare regulation. Furthermore, the penalties associated with a gross misdemeanor offense suggest that section 624.714, subdivision 1a, is not a public welfare offense. Public welfare statutes have historically been punished by "fines or short jail sentences, not imprisonment in the state penitentiary." *Staples,* 511 U.S. at 616, 114 S.Ct. 1793. Gross misdemeanor offenses are punishable by fines of up to $3,000 and incarceration of 90 days to 1 year. Minn.Stat. § 609.02, subds. 3–4 (2010). The difference between the maximum potential gross misdemeanor sentence and the minimum potential felony sentence is only 1 day. We consider sentences of 1 year in prison and fines of $3,000 to be severe punishments incompatible with a public welfare offense.

In sum, we conclude that silence does not suggest that the Legislature intended to dispense with mens rea as an element of possession of a pistol in public, Minn.Stat. § 624.714, subd. 1a. Thus, to obtain a conviction, the State was required to prove that Ndikum knew he possessed the pistol. The district court abused its discretion by failing to so instruct the jury.

Affirmed.