*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0069**

State of Minnesota,
Respondent,

vs.

Stephen Thomas Conlin,
Appellant.

**Filed December 15, 2014
Affirmed
Harten, Judge\***

Winona County District Court
File No. 85-CR-12-179

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Karin L. Sonneman, Winona County Attorney, Christina M. Davenport, Assistant County
Attorney, Winona, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Smith, Judge; and Harten,

Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HARTEN**, Judge

Appellant challenges his convictions of fifth-degree controlled-substance crime and of obstructing, with force, peace officers engaged in the performance of their duties. He argues that the jury instructions on selling controlled substances and on the use of force were not accurate and that the evidence showing that appellant obstructed the peace officers was insufficient. Because we see no error in the jury instruction on controlled substances and no abuse of discretion in not instructing the jury on "force" and because the evidence was ample to show that appellant obstructed peace officers engaged in their duty of executing a search warrant, we affirm.

## FACTS

In late 2011, appellant Stephen Conlin, a barber by trade, purchased an old building that he intended to remodel to serve as living space and the premises of two businesses: a hair salon and a retail marijuana store. He purchased $3,500 worth of tax stamps to cover 1,000 grams of marijuana and ordered tax stamps for another 1,000 grams.

In January 2012, a search warrant was executed on appellant's building. When a peace officer told appellant to show his hands and get on the ground, appellant refused. Four officers eventually got appellant to the ground; other officers were needed to handcuff appellant. The officers found growing marijuana plants, 1.8 pounds of marijuana, tax stamps, packaging materials including labels with appellant's name, and a saleable bag of marijuana with a label and a tax stamp attached.

Appellant was charged with fifth-degree controlled-substance crime—intent to sell marijuana and with obstructing legal process. He asserted a mistake-of-law defense; the district court issued an order stating that this defense was not available to appellant. At trial, appellant testified about his business plan for the sale of marijuana.

A jury found appellant guilty on both counts. He was sentenced to the presumptive guidelines sentence of a year and a day, stayed, and placed on probation for five years.

He challenges his convictions, arguing that the jury instruction on the sale of controlled substances was inaccurate, the jury should have been instructed on the meaning of "force," and the evidence was insufficient to show that he obstructed police officers in the performance of their duties.[1]

## D E C I S I O N

**1.      Jury Instructions**

This court will "review a district court's refusal to give a requested jury instruction for an abuse of discretion. The interpretation of a statute is a legal question we review de novo." *State v. Ndikum*, 815 N.W.2d 816, 818 (Minn. 2012).

---

[1] In his pro se brief, appellant reiterates his argument that his sale of marijuana was legal because he complied with Minn. Stat. § 297D.04 (2010) (requiring any tax obligor who possesses marijuana to pay a tax on it "as evidenced by a stamp or other official indicia") and because Minn. Stat. § 297D.01, subd. 2 (2010), provides that "'Controlled substance' does not include marijuana." But, as the district court noted, Chapter 297D also contains "numerous, direct, and specific indications that sale or possession of marijuana is unlawful." Appellant's pro se argument is without merit.

## A.      Instruction on the Sale of Marijuana

Minn. Stat. § 152.025, subd. 1(a)(1) (2010), provides that it is a controlled-substance crime in the fifth degree if a person "unlawfully sells one or more mixtures containing marijuana or tetrahydrocannabinols, except a small amount of marijuana for no remuneration."  The jury was instructed that:

> The statutes of Minnesota provide that whoever unlawfully sells one or more mixtures containing marijuana except a small amount for no [remun]eration is guilty of a crime.  The elements of possession of marijuana with intent to sell in this case are: First, [appellant] sold marijuana.  To sell means: to sell, give away, barter, deliver, exchange, distribute, or dispose of to another, or to possess with intent to sell.  Second, [appellant] knew or believed that the substance he sold was marijuana.  Third, [his] act took place on or about January 25, 2012 in Winona County, Minnesota.   If you find that each of these elements has been proven beyond a reasonable doubt, [he] is guilty.  If you find that any element has not been proven beyond a reasonable doubt, [he] is not guilty.
>
> . . . .
>
> To know requires only that an actor believes that the specified fact exists.  Intentionally means that the actor either has a purpose to do the thing, or cause the result specified, or believes that the act performed by the actor if successful will cause that result.  In addition, the actor must have knowledge of those facts that are necessary to make the actor's conduct criminal and that are set forth after the word intentionally.  With intent to or with intent that means that the actor either has a purpose to do the thing, or cause the results specified, or believes that the act if successful will cause that result.
>
> In your consideration of the definition and essential elements of the crimes charged, you must keep in mind the legal definitions of those words and phrases I have given you.  Common meanings should be given to all words and terms not specifically defined.

4

The instruction explains each element of the offense. *See State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001) ("[I]t is desirable for the court to explain the elements of the offense rather than simply to read statutes.").

Appellant argues that the jury should have been instructed that the statute prohibits only the unlawful sale of marijuana and that, to find appellant guilty, it also had to find that he "had conscious knowledge that his actions were illegal," which he did not have because he believed his purchase of the tax stamps made his sale of marijuana lawful. But appellant's personal belief as to the legality of his acts is not the issue: "All members of an ordered society are presumed either to know the law or, at least, to have acquainted themselves with those laws that are likely to affect their usual activities." *State v. King*, 257 N.W.2d 693, 697–98 (Minn. 1977); *see also Albrecht v. Sell*, 260 Minn. 566, 569–70, 110 N.W.2d 895, 897 (1961) ("[U]nder well-established principles of law [individuals] are conclusively presumed to be aware of existing statutes and of the fact that revisions in them occur from time to time."). Appellant, having chosen to engage in the sale of marijuana, would be presumed to have acquainted himself with the laws affecting that activity, and none of those laws provides that the purchase of stamps renders the sale of marijuana legal.[2] Thus, even if appellant did not know that his possession and sale of marijuana was not legal, that lack of knowledge is not a defense. The word "unlawful" in the statute excludes those whose possession may be lawful, e.g.,

---

[2] At oral argument, appellant's attorney conceded that appellant does not fall into any group of lawful possessors or sellers.

botanists or pharmacists doing research on marijuana; it does not create an additional element of the crime or impose the need for an additional jury instruction.

Moreover, appellant's argument was addressed, implicitly if not explicitly, in *State v. Skapyak*, 702 N.W.2d 331 (Minn. App. 2005), *review denied* (Minn. 18 Oct. 2005). In *Skapyak*, the defendant had given marijuana to two minors who had told him they were adults. He was charged with third-degree controlled-substance crime under Minn. Stat. § 152.023, subd. 1(3) ("A person is guilty of controlled substance crime in the third degree if . . . (3) the person unlawfully sells one or more mixtures containing a controlled substance . . . to a person under the age of 18"). The defendant argued that, because the age of the victims was an element of the crime and the state had failed to prove the defendant knew the victims' ages, he was entitled to raise a mistake-of-age defense. *Id.* at 333. This court

> reject[ed] [the defendant's] argument that his conduct is not criminal because the sale of a small amount of marijuana to another person is a "petty misdemeanor" and not a "crime" as defined in the criminal code. While [he] may have sold or given away only a small amount of marijuana, marijuana is nonetheless a controlled substance.

*Id.* at 334. The *Skapyak* defendant's belief that distributing marijuana to those he thought were over 18 was not the "unlawful" conduct prohibited by the statute is analogous to appellant's belief that selling marijuana with a tax stamp is not the "unlawful" conduct prohibited by that statute. Just as the state was not required to prove knowledge of the victims' ages to obtain a conviction under Minn. Stat. § 152.023 in

6

*Skapyak*, the state here was not required to prove that appellant knew the sale of marijuana with a tax stamp was illegal in order to convict him.

### B.    Jury Instruction on Force

Appellant was charged with a violation of Minn. Stat. § 609.50, subd. 1(2) (2010) (prohibiting "obstruct[ing], resist[ing], or interfer[ing] with a peace officer while the officer is engaged in the performance of official duties").   Obstructing a peace officer is a misdemeanor, Minn. Stat. § 609.50, subd. 2(3), but a gross misdemeanor if the obstruction is accompanied by "force [or] violence or the threat thereof." Minn. Stat. § 609.50, subd. 2(2).  The statute does not include a definition of "force."

The jury was instructed that:

> The statutes of Minnesota provide that whoever intentionally, physically obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties and does so accompanied by force, violence, or the threat thereof is guilty of a crime.  The elements of obstructing legal process with force in this case are: First . . . [a] police officer is a peace officer.  Second, [appellant] physically obstructed, resisted, or interfered with peace officers in the performance of official duties.  Physically obstructed, resisted, or interfered with means the acts of [appellant] must have the effect of substantially frustrating or hindering the officers in the performance of the officers['] duties.  Third, [his] act was accompanied by force, violence, or the threat thereof. . . .
>
> . . . .
>
> In your consideration of the definition and essential elements of the crimes charged, you must keep in mind the legal definitions of those words and phrases I have given you. Common meanings should be given to all words and terms not specifically defined.

The district court later repeated the last sentence quoted above in response to the jury's request for "the meaning of force or a dictionary" during its deliberations.[3] *See State v. Diedrich*, 410 N.W.2d 20, 23 (Minn. App. 1987) (noting that the lack of a statutory definition for a word means that the word is so commonly used that it requires no further definition).

Appellant challenges the denial of his request for a jury instruction on the meaning of force, arguing that, absent such an instruction, the jury could not distinguish the gross misdemeanor "obstruction with force" from the misdemeanor "obstruction." Even assuming that the omission of an instruction on force was erroneous, the error was harmless. *See State v. Lee*, 683 N.W.2d 309, 316 (Minn. 2004) (holding that the erroneous omission of a jury instruction is reviewed under a harmless-error analysis).

The jury heard a peace officer testify that appellant's resistance in assuming a fetal position with his arms under him was "offensive resistance" in contrast to the "passive resistance" of individuals who simply go limp. From another officer, the jury heard that appellant required that officer to use "a lot of force" to get appellant's arms out from under his body to handcuff him and that it took about five officers to get appellant under control. A third officer testified that several officers assisted him to get appellant's arms out and handcuff him. Thus, the jury had a clear picture of what appellant had done in response to the peace officers' command to get on the ground and put his hands behind him. From the officers' testimony as to the force they had to use to get handcuffs on

---

[3] The parties could not agree on whether to provide the jury with the Black's Law Dictionary definition or the Oxford Dictionary definition.

appellant, the jury could have inferred that appellant was exerting force to obstruct them in the performance of their duty to handcuff him.

Any error in omitting an instruction on the meaning of force was harmless; there was no abuse of discretion in not giving such an instruction. *See Ndikum*, 815 N.W.2d at 818.

## 2. Sufficiency of the Evidence

"The scope of the conduct forbidden by a statute presents an issue of statutory construction, which [appellate courts] consider[] de novo." *State v. Pederson*, 840 N.W.2d 433, 436 (Minn. App. 2013).

Appellant argues that the evidence was not sufficient to show that his conduct when the peace officers came to his building to execute a search warrant violated Minn. Stat. § 609.50, subd. 1(2), by "obstruct[ing], resist[ing], or interfer[ing] with a peace officer while the officer [was] engaged in the performance of official duties." He argues further that he should have been charged under Minn. Stat. § 609.50, subd. 1(1) (2010) (prohibiting "obstruct[ing], hinder[ing], or prevent[ing] the lawful execution of any legal process") because the peace officers were executing a search warrant. But an officer executing a search warrant is engaged in the performance of official duties; the two are not mutually exclusive. While Minn. Stat. § 609.50, subd. 1(1), applies to anyone, including peace officers, who is lawfully executing a legal process, Minn. Stat. § 609.50, subd. 1(2), applies to any peace officer who is performing an official duty, including executing a legal process. Appellant's argument that "'official duties' [are] separate and distinct from 'the lawful execution of any legal process'" produces the absurd result of

9

construing one statute to remove the execution of search warrants from the list of peace officers' official duties even though another statute, Minn. Stat. § 626.05 (2012), mandates that peace officers, and only peace officers, execute search warrants. It is presumed that the legislature did not intend an absurd result. Minn. Stat. § 645.17(1) (2012).

Appellant relies on *Pedersen*, 840 N.W.2d at 438 (affirming conviction of fourth-degree assault of a peace officer under Minn. Stat. § 609.2231, subd. 1 (2010), of an individual who kicked the head of an officer who had come to her apartment to investigate a report of a possible domestic assault, but reversing the individual's conviction under Minn. Stat. § 609.50, subd. 1(1), because no legal process was involved). But *Pederson* is distinguishable: the execution of a search warrant is part of the legal process, while the investigation of a report of a possible assault is not.

The evidence was sufficient to show that appellant obstructed, resisted, and interfered with peace officers in the performance of their duties.

**Affirmed.**