**STATE of Minnesota, Respondent,**

v.

**Inez Fern EIDE, Appellant.**

A16-1373

Court of Appeals of Minnesota.

Filed May 30, 2017

Lori Swanson, Attorney General, St. Paul, Minnesota; and Christopher P. Renz,

Gary K. Luloff, Chestnut Cambronne, PA, Minneapolis, Minnesota (for respondent).

Aaron J. Morrison, Wold Morrison Law, Minneapolis, Minnesota (for appellant).

Considered and decided by Rodenberg, Presiding Judge; Ross, Judge; and Stauber, Judge.

## OPINION

ROSS, Judge

When Inez Eide arrived at the Minneapolis—St. Paul International Airport and prepared to pass through a security checkpoint to meet a young relative at a gate, she put her purse, which contained a loaded handgun, onto the x-ray conveyer. Airport police issued Eide a citation for violating an airport ordinance. Eide argues on appeal from her conviction that the ordinance is prohibited by Minnesota Statutes section 471.633 and is unconstitutional as a strict-liability offense. Because the Metropolitan Airports Commission is not a "governmental subdivision" or other entity prohibited from regulating firearms under section 471.633, and because the strict liability of the ordinance does not violate Eide's constitutional rights, we affirm.

## FACTS

Inez Eide went to the Minneapolis—St. Paul International Airport in June 2015 to pick up her minor niece, who was arriving on a flight unaccompanied by an adult. Eide obtained a gate pass so she could meet her niece as she deplaned. Eide put her purse on the security checkpoint conveyor to be scanned. But she left her loaded handgun inside, and security personnel discovered it. Eide told airport police that she had forgotten about the gun. Police charged Eide with violating a Metropolitan Airports Commission (MAC) ordinance prohibiting anyone from putting a

firearm through inspection equipment at a security screening area without first informing security personnel about the gun.

Eide argued to the district court that the ordinance is barred by Minnesota Statutes section 471.633, which restricts certain entities from regulating firearms, and that the ordinance violates the Due Process Clause and the Second Amendment by establishing a strict-liability firearm offense. The district court rejected the statutory argument, reasoning that a different statute authorizes the MAC to enact ordinances and that section 471.633 does not limit that authority. The district court also rejected Eide's constitutional arguments. The parties submitted the case for trial on stipulated facts, and the district court found Eide guilty of violating the ordinance.

Eide appeals.

### ISSUES

I. Does Minnesota Statutes section 471.633 prohibit the MAC from regulating firearms in airport security screening areas?

II. Does MAC Ordinance 117.6.5 violate Eide's constitutional rights by establishing a strict-liability offense for placing a firearm in a security screening device without declaring the firearm to security personnel?

### ANALYSIS

### I

■ Eide challenges the validity of the ordinance she violated. She argues that the MAC ordinance prohibiting a person from putting a firearm in a security inspection device without first notifying security personnel is preempted by a Minnesota statute that reserves the exclusive authority to regulate firearms for the legislature. The allegedly invalid MAC ordinance provides in relevant part as follows:

No Person shall place a firearm . . . onto inspection equipment at a Security Screening Area without first declaring such item to the Screening Personnel. . . .

To comply with federal regulations regarding prohibited items in the Sterile Area; to make screening operations more efficient and transient; and, to further promote the public safety and welfare of the Airport and its travelers, this provision is to be a strict liability offense. This provision is violated whether or not the Person had intent or knowledge that the item placed on the inspection equipment contained a firearm. . . .

MAC, Minn., Ordinance 117.6.5 (2013).

The statute that Eide says prohibits the ordinance states as follows:

The legislature preempts all authority of a home rule charter or statutory city including a city of the first class, county, town, municipal corporation, or other governmental subdivision, or any of their instrumentalities, to regulate firearms, ammunition, or their respective components to the complete exclusion of any order, ordinance or regulation by them except that:

(a) a governmental subdivision may regulate the discharge of firearms; and

(b) a governmental subdivision may adopt regulations identical to state law.

Local regulation inconsistent with this section is void.

Minn. Stat. § 471.633.

The legislature has specifically authorized the MAC to adopt ordinances related to the management of its airports and has established that violations are misdemeanors. Minn. Stat. § 473.608, subd. 17(1) (2016). Additionally, although the MAC is a "public corporation" for some purposes,

Minn. Stat. § 473.603, subd. 1 (2016), for other specified purposes the legislature has deemed any airport authority of the state to be a "municipality," Minn. Stat. § 360.031 (2016), and it has afforded each of these "municipalities" the power "[t]o adopt and amend all needful ... ordinances for the ... use of any properties under its control" and "to appoint airport ... police, with full police powers" to enforce its ordinances, Minn. Stat. § 360.038, subd. 3 (2016).

We must decide whether the limits imposed by Minnesota Statutes section 471.633 prevent the MAC from adopting its firearm-placement restriction embodied in MAC Ordinance 117.6.5. This statutory interpretation and application issue is a question of law, which we review de novo. *See Rushton v. State*, 889 N.W.2d 561, 563 (Minn. 2017).

We begin by addressing some apparent confusion over the operative phrase in section 471.633, "The legislature preempts all authority of a home rule charter or statutory city including a city of the first class, county, town, municipal corporation, or other governmental subdivision, or any of their instrumentalities, to regulate firearms...." We construe a statute's words and phrases according to the rules of grammar and according to their common usage. Minn. Stat. § 645.08(1) (2016). A bit of a grammar problem appears in the district court's treatment of this phrase. The district court construed this language to mean that section 471.633 applies only to "a home rule charter or statutory city," treating the phrase as though all the terms that follow the word "including" are merely examples of "home rule charter or statutory cit[ies]" and implying that cities are the only entities preempted from regulating firearms. The meaning of the phrase's terms and its punctuation lead us to believe that the district court based its conclusion on a misunderstanding.

Minnesota has two types and four classes of cities. The two types are statutory cities, meaning "any city which has not adopted a home rule charter pursuant to the Constitution and laws," and home rule charter cities, meaning "any city which has adopted such a charter." Minn. Stat. § 410.015 (2016); *see also* Minn. Const. art. XII, § 4 (allowing any "local government unit when authorized by law" to "adopt a home rule charter for its government"). A city of any class may be either a statutory or home rule charter city. The four classes of cities are determined by the number of inhabitants, ranging from first class (cities with more than 100,000 inhabitants) down to fourth class (cities with 10,000 or fewer inhabitants). Minn. Stat. § 410.01 (2016).

With these distinctions in mind, one can construe all the terms in section 471.633 after the word "including" merely as examples of cities only if all those terms described some form of city. But they do not; among them are counties, towns, and municipal corporations. The law distinguishes between a city (of any class or type) and a county or a town. *Compare* Minn. Stat. § 410.015, *and* Minn. Stat. § 410.01 (describing cities by type and class, respectively), *with* Minn. Stat. § 370.01 (2016), *and* Minn. Stat. § 368.01, subd. 1 (2016) (describing counties and towns, respectively). Many statutes separately list cities, towns, and counties as different kinds of entities. *See, e.g.*, Minn. Stat. §§ 245.62, subd. 1 ("Any city, county, town, [or] combination thereof ... may establish a community mental health center"), 471.381 (detailing payment obligations of cities, towns, and counties) (2016). And although cities, towns, and counties are often referred to as municipal corporations, the legislature has also specifically designated other entities as municipal corporations.

These include, for example, sanitary sewer districts, *see* Minn. Stat. § 115.61 (2016), hospital districts, *see* Minn. Stat. § 447.31, subd. 6 (2016), and municipal gas agencies, *see* Minn. Stat. § 453A.03, subd. 1(a) (2016). Because a "county" or a "town" is not a "city," and because a "municipal corporation" can include more than just cities, counties, and towns, one must infer that the terms following "including" are not merely examples of cities.

The punctuation of the phrase corroborates this understanding. "[W]hile matters like punctuation are not decisive of the construction of a statute, where they reaffirm conclusions drawn from the words themselves they provide useful confirmation." *City of Oronoco v. Fitzpatrick Real Estate, LLC*, 883 N.W.2d 592, 595 (Minn. 2016) (quoting *United States v. Naftalin*, 441 U.S. 768, 774 n.5, 99 S.Ct. 2077, 2082 n.5, 60 L.Ed.2d 624 (1979)). The various entities that we can identify based on the language in section 471.633 are all separated by commas. This reinforces our conclusion that the terms are the distinct types of entities restricted from regulating firearms.

On that conclusion, section 471.633 can be best paraphrased this way: despite generally having broad authority to enact ordinances, the following specified entities and "any of their instrumentalities" are prohibited from regulating firearms: (1) any home rule charter or statutory city (including a city of the first class), (2) any county, (3) any town, (4) any kind of municipal corporation, and (5) any "other governmental subdivision." So we agree with Eide that, contrary to the district court's understanding, it is not necessary for an entity to be a home rule charter or statutory city to be prohibited by section 471.633 from regulating firearms. We must now decide whether the section prohibits the MAC from regulating firearms even though it is not a home rule charter or statutory city.

Whether section 471.633 prohibits the MAC from regulating firearms depends on whether the MAC falls into one of the entity categories that the statute lists. Of course the MAC is not a city, county, or town. And although the legislature does label the MAC as a "municipality" in one statute, it does so expressly only for the purpose of certain other statutes, specifically sections 360.031 to 360.045, not section 471.633. Minn. Stat. § 360.031. Additionally, although "[f]or the purposes provided in sections 473.601 to 473.679," the MAC "has been created as a public corporation," Minn. Stat. § 473.603, subd. 1, the legislature did not include public corporations in the restricted list in section 471.633. Eide instead relies on the apparent catch-all category of section 471.633, arguing that the MAC is an "other governmental subdivision."

Is the MAC a "governmental subdivision" for the purposes of the firearm-regulation restriction? The legislature does not say so expressly. And the legislature has not established a general definition of "governmental subdivision." Instead, it has chosen to expressly identify those entities that are (or are not) governmental subdivisions on a statute-by-statute basis, depending on the purpose of each statute. For instance, a school district is a "governmental subdivision" in Minnesota Statutes section 353.01, subdivision 6(a) (2016), but it is not for purposes of section 471.633. *See* Minn. Stat. § 471.634 (2016) (expressly excluding school districts from the firearm-regulation restriction). And although the legislature does expressly include the MAC as a governmental subdivision "for the purposes of [the chapter governing the Public Employees Retirement Association]," Minn. Stat. § 353.01, subd. 6(b),

there is no similar language defining the MAC expressly as a "governmental subdivision" for the purposes of section 471.633.

There are many other examples of the legislature's deliberate use of the term "government subdivision," sometimes broadly and sometimes not. *See, e.g.,* Minn. Stat. §§ 473.223 (stating that for purposes of section 223, the term "governmental subdivision" includes "municipalities, counties and other political subdivisions generally"), 353.01, subd. 6(a) (defining "governmental subdivision" for the purposes of Chapter 353 to mean "a county, city, town, school district within this state, or a department, unit or instrumentality of state or local government, or any public body established under state or local authority that has a governmental purpose, is under public control, is responsible for the employment and payment of the salaries of employees of the entity, and receives a major portion of its revenues from taxation, fees, assessments or from other public sources"), 275.60(b) (stating for purposes of that statute the term "local governmental subdivision" includes "counties, home rule and statutory cities, towns, school districts, and all special taxing districts"), 355.01, subd. 3g (providing that "local governmental subdivision" means a political subdivision as defined by a specified federal statute, an instrument of the state or of a state political subdivision, a governmental subdivision as defined by a specified state statute, or a joint-powers instrumentality established under a specified state statute), 442A.01, subd. 7 (defining "related governmental subdivision" to mean "a municipality or organized town wherein there is a territorial unit of a district or, in the case of an unorganized area, the county"), 458A.03, subd. 6 (describing the St. Cloud Metropolitan Transit Commission as a "governmental subdivision" as defined in section 353.01) (2016).

Our statutory survey informs us that when the legislature wants to designate an entity as a "governmental subdivision," it generally does so expressly and for the purpose of particularly specified provisions. Its decision to expressly identify the MAC as a "public corporation" but not as a "governmental subdivision" does not suggest any ambiguity in its classification. *Compare* Minn. Stat. § 473.603 (establishing the MAC as a "public corporation" for specified purposes), *with* Minn. Stat. § 473.123, subd. 1 (2016) (establishing the Metropolitan Council as *both* a "public corporation" *and* a "political subdivision of the state").

■ Another statutory interpretive tool aids our analysis. The doctrine of *ejusdem generis* teaches that general language that follows a listing of specific subjects is presumed to be limited to subjects similar to those expressly listed. *Kaiser v. Memorial Blood Ctr.*, 486 N.W.2d 762, 766 (Minn. 1992); Minn. Stat. § 645.08(3) (2016) (codifying the principle of *ejusdem generis* by requiring that "[g]eneral words are construed to be restricted in their meaning by preceding particular words"). Each of the listed entities in section 471.633 has the character of a residential community. And the last sentence of the statute, "*Local regulation inconsistent with this section is void*," Minn. Stat. § 471.633 (emphasis added), adds to the impression that the legislature was focused on residential governmental bodies rather than administrative bodies. *See* VIII *The Oxford English Dictionary* 1077 (2d ed. 1991) (defining "local" as "pertaining to or concerned with 'place' or position in space"); *The American Heritage Dictionary of the English Language* 1029 (5th ed. 2011) (defining "local" as "of, relating to, or characteristic of a particular place" and "of or relating to

a city, town or district rather than a larger area").

The MAC, which oversees Minnesota airport operations, much more closely resembles an administrative agency than a local residential body. *See* Minn. Stat. § 473.121, subd. 5(a) (2016) (describing the MAC as a "metropolitan agency"); *see also* Minn. House Research, *Short Subjects, Terms Used in Local Government Legislation* (Jan. 2011), https://www.leg.state.mn. us/docs/2012/other/120099.pdf (stating that the term "public corporation" may apply to "quasi-governmental entities"). One does not intuitively associate the MAC with local communities. *See* Minn. Stat. § 473.121, subd. 6 (2016) (defining "local government unit" as "any county, city, town, school district, special district or other political subdivisions or public corporation, *other than . . . a metropolitan agency*") (emphasis added). Because the MAC, a public corporation that is administrative in nature, does not share the residential-community characteristics common among the listed entities in section 471.633, our inference that the legislature did not intend for the MAC to be construed as an "other governmental subdivision" is strengthened.

This is a close case. We acknowledge that our conclusion rests on assumptions from context, and that there is room for argument based on other assumptions. For example, one might infer instead that, by failing to expressly exclude the MAC from the restriction the way it expressly excluded school districts, the legislature meant for the MAC to be included in the restriction. And the MAC's authority to create and enforce ordinances (violations of which are misdemeanors) is undoubtedly similar to the authority of those entities expressly included in section 471.633. But in the absence of the legislature specifically deeming the MAC a "governmental subdivision" here, we are satisfied that the text and context most support our conclusion. We add that the broader context corroborates the conclusion. As we have discussed in the broader scheme, the legislature granted extensive authority to the MAC to enact ordinances, even empowering the MAC to create a police department to enforce its ordinances. We are persuaded that, after it so expansively conferred police power to the MAC, the legislature would restrict that power only with express or at least more clear terms. That is, we presume that if the legislature intended to carve from the MAC's broad authority the power to prohibit people from putting firearms into security-screening equipment or otherwise to regulate firearms at the airport, it would have said so using unmistakable language.

Accepting Eide's position to the contrary would require us to hold essentially that the legislature intended section 471.633 to preempt *every* law-making body in the state, other than school districts, from regulating firearms except to restrict their discharge. If this sweeping objective was the legislature's intent, it could have said exactly that. And although this is not an unreasonable rendering of the section, it is not the most reasonable because it would make the legislature's specific listing of the various entities superfluous. Interpreting it this way would therefore require us to ignore the maxim that "[a] statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (quotation omitted).

For all these reasons, we conclude that the MAC is not an "other governmental subdivision" for purposes of section 471.633, nor is it included in the other identified restricted categories. The stat-

ute therefore does not preclude the MAC from regulating firearms through MAC Ordinance 117.6.5.

## II

■ Eide also challenges the constitutionality of MAC Ordinance 117.6.5 on the theory that it infringes on her due-process and Second Amendment rights by improperly imposing a strict-liability standard. The constitutionality of an ordinance presents a question of law that we review de novo. *See McCaughtry v. City of Red Wing*, 831 N.W.2d 518, 521 (Minn. 2013). We presume that ordinances are constitutional, *id.* at 522, and the appellant typically bears the burden of proving beyond a reasonable doubt that a law is unconstitutional. *See State v. Craig*, 826 N.W.2d 789, 791 (Minn. 2013). Eide does not meet this standard.

### Due Process

■ Eide, who maintains that she did not knowingly engage in the prohibited conduct because she forgot that her handgun was in her purse, argues that MAC Ordinance 117.6.5 violates her due-process rights by creating a strict liability offense. She relies significantly on *State v. Ndikum*, a case in which the supreme court interpreted Minnesota's law prohibiting the carrying of a pistol in public without a permit, holding that the law included an implied mens rea element. 815 N.W.2d 816, 822 (Minn. 2012). But Eide reads too much into that holding. The *Ndikum* court did not establish a due-process right to a mens rea element in a firearm regulation; it merely decided whether a particular statute that was silent as to a mens rea element implicitly included the element anyway. *Id.* And in doing so, the *Ndikum* court reiterated that a lawmaker can indeed impose strict liability but that it

should do so expressly. *Id.* at 818–19. Here, the challenged ordinance expressly and repeatedly declares that it presents a strict-liability offense. *Ndikum* does not support Eide's due-process argument.

■ Eide appears to argue that due process requires us to interpret or apply the ordinance so as to include a mens rea element because strict liability offenses must be limited to those that promote public safety. The argument is unavailing. Certain statutes create public-welfare offenses so clearly that courts may infer that even a statute's silence as to the mens rea requirement could allow for strict liability because the circumstances underlying the statute are "so dangerous that a defendant should be alerted to the probability of strict regulation." *Id.* at 819–20 (quotation omitted). But this reasoning still frames an issue of statutory interpretation, not constitutional rights. Eide fails to demonstrate by any standard, and certainly not beyond a reasonable doubt, that the ordinance violates her right to due process.

### Second Amendment

Eide also contends that MAC Ordinance 117.6.5's creation of strict liability unconstitutionally infringes on her Second Amendment rights. She fails to develop the argument and therefore forfeits it. *See State v. Butcher*, 563 N.W.2d 776, 780–81 (Minn. App. 1997) (refusing to consider argument mentioned but not developed in brief), *review denied* (Minn. Aug. 5, 1997). We do not consider the argument on the merits.

## DECISION

The Metropolitan Airports Commission is not an "other governmental subdivision" as the term is listed in Minnesota Statutes

section 471.633, and it does not fall into any of the section's other categories. The statute therefore does not limit the MAC's authority to regulate firearms in the airport's security screening area. And Eide has not shown that the strict-liability character of the ordinance violates any constitutional rights.

**Affirmed.**